OPINION
{¶ 1} Plaintiff-appellant Kimberly Lumpkin appeals from a judgment rendered in favor of defendant-appellee John C. Mobley, M.D., in her medical malpractice action against Dr. Mobley. Lumpkin contends that the trial court erred by excluding evidence that the mistake Dr. Mobley made during Lumpkin's surgery — the transection of her common bile duct instead of her cystic duct — was identical to a mistake he had recently made in a surgery he performed upon another patient, because this evidence demonstrates that Dr. Mobley was on notice that his surgical technique was flawed. We conclude that the trial court did not abuse its discretion in excluding evidence of the prior incident, because the record does not reflect any proffer to show how the circumstances of the other patient's surgery were substantially similar to the circumstances of Lumpkin's surgery. We also conclude that the trial court did not abuse its discretion in excluding evidence of the prior incident upon the ground that the prejudicial effect of the inference arising from this evidence — that the doctor had a similar bad result once before, so he must be a bad surgeon — outweighs any legitimate probative value it might have.
 {¶ 2} Lumpkin also contends that the trial court erred by excluding evidence regarding Dr. Mobley's proctorship, because it was relevant to his credibility as a witness and his ability to meet accepted standards of care. We conclude that the trial court did not abuse its discretion in denying Lumpkin the opportunity to impeach Dr. Mobley with his deposition testimony regarding his proctorship, because that testimony only weakly implicates Dr. Mobley's credibility, and is unduly prejudicial to the extent that it suggests the forbidden inference that one previous, similar bad result implies that Dr. Mobley is an incompetent surgeon.
 {¶ 3} Because we reject both of Lumpkin's assignments of error, the judgment of the trial court is affirmed.
 I {¶ 4} In December, 1999, Kimberly Lumpkin went to the Emergency Department at Wayne Hospital complaining of abdominal pain. Lumpkin was admitted under the care of Dr. John C. Mobley, and underwent an ultrasound, which revealed that she had several gallstones. Dr. Mobley recommended that Lumpkin undergo a laparoscopic cholecystectomy to remove the gall bladder. During the surgery, Dr. Mobley realized that he had transected the common bile duct instead of the cystic duct. Dr. Mobley proceeded to remove the gallbladder, and then performed a static cholangiogram and confirmed the injury to the common bile duct. Dr. Mobley then referred Lumpkin to Dr. Richard Welling, a surgeon at Good Samaritan Hospital in Cincinnati, Ohio, for surgical treatment of the injury to the common bile duct. Lumpkin was transferred to Good Samaritan Hospital, and Dr. Welling performed a roux-en-Y hepaticojejunostocmy to repair the injury to the common bile duct. Lumpkin was hospitalized for nine days.
 {¶ 5} A year later, Lumpkin and her husband, Travis Lumpkin, filed a complaint against Wayne Hospital and Dr. Mobley, alleging that Dr. Mobley's treatment of Lumpkin fell below the accepted standards of care, and that his negligence proximately caused her to undergo a static cholangiogram, a roux-en-Y hepaticojejunostocmy, and nine days in the hospital. Lumpkin later amended her complaint to include a claim for negligent credentialing against Wayne Hospital, alleging that Wayne Hospital was negligent in its hiring, supervising, training and retaining of Dr. Mobley, because it had knowledge of a previous identical act of negligence by Dr. Mobley and failed to prevent future acts of negligence by Dr. Mobley.
 {¶ 6} Wayne Hospital and Dr. Mobley moved to bifurcate Lumpkin's negligent credentialing claim against Wayne Hospital from the negligence claim against Dr. Mobley. The trial court bifurcated the claims finding that "[t]he proof necessary to establish the claim against Wayne Hospital, including any prior medical negligence by Dr. Mobley, would possibly be more prejudicial than probative in determining whether there was any medical negligence by Dr. Mobley in his treatment of Kimberly Lumpkin." In February, 2003, Lumpkin voluntarily dismissed Wayne Hospital, without prejudice.
 {¶ 7} Dr. Mobley filed a motion in limine to prevent Lumpkin from "introducing any evidence of any prior malpractice claims against Dr. Mobley," and "from introducing any evidence or asking any questions concerning whether Dr. Mobley was investigated or `proctored' by any executive committee members, for quality assurance purposes at Wayne Hospital, relative to any complications from laparoscopic procedures." The trial court granted this motion in part, prohibiting Lumpkin from "introducing any testimony about a specific prior incident of a bad outcome with this procedure either by name or by general reference." The trial court denied the motion in part, allowing evidence regarding the proctoring process and the observations, suggestions and recommendations of the two proctoring physicians, Dr. Leroy Steinbrecher and Dr. Samuel Brubaker, who observed Dr. Mobley's surgical performance.
 {¶ 8} This case proceeded to a jury trial. The jury rendered a verdict in favor of Dr. Mobley. From the judgment rendered against her, Lumpkin appeals.
 II {¶ 9} Lumpkin's First Assignment of Error is as follows:
 {¶ 10} "The trial court committed reversible error by excluding evidence that the mistake Dr. Mobley made during the surgery of Kimberly Lumpkin was identical to the mistake he had recently made in the surgery of Deborah Thomas because the evidence demonstrated that Dr. Mobley was on notice that his surgical technique was flawed."
 {¶ 11} Lumpkin contends that evidence showing Dr. Mobley made the same surgical "mistake" on another patient, Deborah Thomas, a year prior to Lumpkin's surgery, using the same surgical technique used on her, is probative of the fact that Dr. Mobley had knowledge that his surgical technique was flawed. Lumpkin argues that, pursuant to Renfro v. Black
(1990), 52 Ohio St.3d 27, 31, 556 N.E.2d 150, evidence of the prior incident is admissible, because the circumstances of Thomas's surgery were substantially similar to the circumstances of her surgery.
 {¶ 12} "A trial court has broad discretion in determining whether to admit or exclude evidence. Absent an abuse of discretion that materially prejudices a party, the trial court's decision will stand"Krischbaum v. Dillon (1991), 58 Ohio St.3d 58, 66, 567 N.E.2d 1291
(citations omitted). A trial court abuses its discretion when it makes a decision that is unreasonable, arbitrary, or unconscionable. Blakemorev. Blakemore (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (citations omitted). In applying the abuse of discretion standard, an appellate court is not free to substitute its own judgment for that of the trial court. Berk v. Matthews (1990), 53 Ohio St.3d 161, 169, 559 N.E.2d 1301
(citations omitted).
 {¶ 13} "Prior occurrences are sometimes relevant `to show that a party knew or had notice of a dangerous condition.' `[I]n order for such occurrences to have been admissible to show prior knowledge on the part of [the defendant], these incidents must have occurred under circumstances substantially similar to those in [the plaintiff's] case.' The trial court has the discretion to determine whether the prior occurrences were substantially similar to the accident in question. Furthermore, the proponent of prior occurrence evidence has the burden of showing the substantial similarity of the circumstances." Eakes v. K-martIntern. Headquarters, Inc., Montgomery App. No. 17334, 1999 WL 252481, at *3 (internal citations omitted).
 {¶ 14} In Renfro, 52 Ohio St.3d at 32, the Ohio Supreme Court held that the trial court did not abuse its discretion in excluding prior occurrence evidence where there had been no proffer to show how the circumstances of the prior occurrences were substantially similar to the circumstances at issue. We reached the same decision in Eakes, 1999 WL 252481, at *4, concluding that the trial court did not abuse its discretion in excluding prior occurrence evidence where the plaintiff failed to discuss the prior occurrence with sufficient specificity to meet his burden of showing that the circumstances of the prior occurrence were substantially similar to the circumstances at issue.
 {¶ 15} Lumpkin contends that she was never given the opportunity to establish that the circumstances of Thomas's surgery were substantially similar to the circumstances of her surgery, because the trial court refused to admit the evidence that would have demonstrated the substantial similarity. But the record reflects that Lumpkin made no proffer to show how the circumstances of Thomas's surgery were substantially similar to the circumstances of her surgery. Lumpkin failed to address the prior incident with any specificity, so as to satisfy her burden of showing that the circumstances of Thomas's surgery were substantially similar to the circumstances of her surgery. We conclude that the trial court did not abuse its discretion in excluding the prior incident of Thomas's surgery.
 {¶ 16} We reach the same result by concluding that the trial court did not abuse its discretion in excluding the prior incident of Thomas's surgery as unfairly prejudicial. Evid. R. 403(A) provides that "[a]lthough relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice * * *." InMcGarry v. Horlacher, Montgomery App. No. 18901, 2002-Ohio-3161, at ¶ 43, we concluded that the trial court properly excluded, as unfairly prejudicial, evidence of the existence of a prior medical malpractice case against the defendant physician, the facts of that case, and its result.
 {¶ 17} In this case, the trial court ruled as follows:
 {¶ 18} "The Court: The potential for damage comes in the jury somehow making an extrapolation or an interpretation that a prior bad outcome is somehow evidence of negligence, okay. The Court's troubled with specific references to any other prior case. So whether or not you bring up specifically Deborah Thomas or a prior procedure with a similar bad outcome, that's where the most likely damage occurs.
 {¶ 19} "Other aspects that the Plaintiff would like to hear, specifically the proctoring process and recommendations from other surgeons seems to be probative as to whether or not there was a deviation and whether there's a standard of care for one process or not, okay. This is somewhat dividing the baby.
 {¶ 20} "The Court finds that the Motion will be granted in part and would prohibit the Plaintiff from introducing any testimony about a specific prior incident of a bad outcome with this procedure either by name or by general reference.
 {¶ 21} "* * *
 {¶ 22} "So we would at least eliminate the possible prejudicial affect of a prior case, and I don't have any idea whether there's a breach of standard of care in that case or not, okay. I don't have any idea if the facts apply or are similar enough in the Deborah Thomas case or whether there was just the Deborah Thomas case as a part of the proctoring process or other surgical procedures. I don't want to get into what Wayne Hospital was trying to accomplish and allow an inference that there was a bad outcome of the same procedure. That's outside the scope of anything we can comfortably say is related to this surgery."
 {¶ 23} Consistent with our conclusion in McGarry, supra, we conclude that the trial court did not abuse its discretion in excluding, as unfairly prejudicial, the existence of a prior medical malpractice case involving Thomas's surgery, the facts of that case and its result. The circumstances of the case before us are even stronger than those inMcGarry, supra, because there was, at the time of trial, no finding of prior medical malpractice. The evidence Lumpkin sought to present merely established that in a previous gall bladder surgery, Dr. Mobley had transected the common bile duct instead of the cystic duct. This is a known risk of the procedure. Proof of one bad result in a previous, similar surgery, without more, promotes an improper inference that because a doctor has had one bad result on a previous occasion, the doctor is incompetent. In the circumstances of this case, we agree with the trial court that this unfair inference outweighs any probative value this evidence might have.
 {¶ 24} Lumpkin's First Assignment of Error is overruled.
 III {¶ 25} Lumpkin's Second Assignment of Error is as follows:
 {¶ 26} "The trial court committed reversible error by excluding evidence about Dr. Mobley's proctorship as it was directly relevant to his credibility as a witness and his ability to meet accepted standards of care."
 {¶ 27} Lumpkin contends that the trial court abused its discretion in excluding Dr. Mobley's deposition testimony regarding his proctorship, because it was relevant to his credibility. Dr. Mobley testified, under oath, as follows:
 {¶ 28} "Q. As a consequence did [sic] the Deborah Thomas case, were your surgical privileges at Wayne County Hospital restricted in any way?
 {¶ 29} "A. No, sir.
 {¶ 30} "Q. You weren't asked to proctor under anybody with respect to laparoscopic procedures as a consequence of that?
 {¶ 31} "A. No, sir.
 {¶ 32} "Q. So you continued to perform your routine surgical services there and rotate every three nights as you had traditionally?
 {¶ 33} "A. Yes, sir."
 {¶ 34} Lumpkin contends that the trial court erred in denying her the opportunity to impeach Dr. Mobley with his deposition testimony, because Dr. Mobley falsely denied that he was asked to undergo a proctorship as a consequence of the complications in Thomas's surgery. Lumpkin argues that Dr. Mobley's false denial is evident, based on a letter from Douglas A. Riffell, the President of the Executive Committee, dated July 7, 1998, in which Riffell wrote, in pertinent part, the following:
 {¶ 35} "The surgical complication rates for gallbladder surgeries over the last year and a half were recently reviewed by the Executive Committee. This review was performed to evaluate a series of reported surgical complications by physician #475 [Dr. Mobley]. Physician #475 had one case of laparoscopic common bile duct injury, one case of cystic duct leakage after laparoscopic cholecystectomy, and one laparoscopic iliac vein injury. Also reported during open cholecystectomy was a common duct injury and injury to the hepatic flexure of the colon.
 {¶ 36} "The committee had at hand, literature from the textbook, Current Surgical Therapy, which indicated major bile duct injury rate in laparoscopic cholecystectomies is between .3 and .6%. The one major bile duct injury occurring in one of the laparoscopic cholecystectomies performed by physician #475 since 1995, falls statistically within this range of occurrence. None the less, the committee concluded that this small but real accumulation of complications merited a response designed to enhance professional growth and to ensure the medical staff and the Hospital that biliary surgery is being performed in [sic] proper and safe manner. The committee was unanimous in its sentiment that the data does not provide justification for reduction of privileges."
 {¶ 37} The record shows that Thomas's surgery occurred approximately one year prior to Lumpkin's surgery. Lumpkin's surgery was on December 19, 1999. Therefore, Thomas's surgery was approximately in December, 1998. Lumpkin's contention that the trial court abused its discretion in denying her the opportunity to impeach Dr. Mobley with his deposition testimony, where he denied that he was asked to undergo a proctorship as a consequence of the surgical complication involving Thomas, is based on a letter from Riffell, which was dated July 7, 1998, approximately five months prior to Thomas's surgery.
 {¶ 38} We conclude that the trial court did not abuse its discretion, because Dr. Mobley's deposition testimony, denying that he was asked to undergo a proctorship as a consequence of his surgical complication involving Thomas, is only weakly probative, at best, of Dr. Mobley's credibility. Obviously, if the Riffell letter recommending the proctorship preceded the surgery Dr. Mobley performed upon DeborahThomas, then the proctorship was not a consequence of the bad result in that surgery, and Dr. Mobley's deposition answer was entirely truthful. Even if the Thomas surgery preceded the Riffell letter, and is one of the matters referred to in that letter, Dr. Mobley's deposition answer would not clearly be erroneous. As phrased, Dr. Mobley could reasonably have construed the question as asking whether the proctorship was caused solely by the bad result in the Thomas surgery. At most, the Riffell letter might establish that the bad result in the Thomas surgery was one of a "small but real accumulation of complications [following surgeries]" that led to the proctorship recommendation.
 {¶ 39} Because Dr. Mobley's deposition answer only weakly implicated his credibility, if at all, the trial court could reasonably have concluded that the unfair prejudice resulting from that line of questioning — that the bad result in the Thomas surgery implies that Dr. Mobley is incompetent — outweighed its probative value.
 {¶ 40} Lumpkin also contends that the trial court abused its discretion when it excluded evidence explaining the basis for Dr. Mobley's proctorship, because it was relevant to demonstrate that Dr. Mobley's surgical technique was below the accepted standards of care. Specifically, Lumpkin contends that the trial court erred in refusing to admit the full depositions of Dr. Leroy Steinbrecher and Dr. Samuel Brubaker and letters written by the two physicians showing that Dr. Mobley's proctorship was a result of his surgical complications in laparoscopic cholecystectomies and common bile duct injuries in prior incidents.
 {¶ 41} The trial court allowed evidence regarding the proctoring process and the observations, suggestions and recommendations of the two proctoring physicians, Dr. Steinbrecher and Dr. Brubaker, who observed Dr. Mobley's surgical performance. However, the trial court prohibited evidence, as unfairly prejudicial, of "any testimony about a specific prior incident of a bad outcome with this procedure either by name or by general reference."
 {¶ 42} At trial, Dr. Steinbrecher testified as follows:
 {¶ 43} "Q. I have a letter here which will be Exhibit C. Did you author this letter?
 {¶ 44} "A. I authored this letter, yes.
 {¶ 45} "Q. This letter contains your thoughts and comments about your mentorship of Dr. Mobley.
 {¶ 46} "A. Yes.
 {¶ 47} "Q. Let's see, in the fourth paragraph of the letter it states, `I find his work at the present time satisfactory. There are some concerns I have about his techniques. We have discussed some of these. I have tried to impress upon him the need for careful dissection around the common duct and a bit perhaps more care with placement of the trocar system.' Is that a correct reading of that paragraph?
 {¶ 48} "A. That's correct.
 {¶ 49} "Q. Can you explain to me the concerns you have about Dr. — or had about Dr. Mobley's techniques at the time you mentored him?
 {¶ 50} "A. The concerns were two-fold. As I discussed here, number one, that the concern about his placement of the trocar systems. Two, about his dissection around the common duct."
 {¶ 51} Dr. Brubaker also testified as follows:
 {¶ 52} "Q. The next exhibit has been marked as Exhibit B which is a letter dated November 28th, 1998. It states Samuel M. Brubaker, M.D., is the author. Is that your signature?
 {¶ 53} "A. It is.
 {¶ 54} "Q. In this letter you state, `Since surgery is an art as well as a science, there are a myriad of minor technical points from variation from surgeon to surgeon. I have shared with Dr. Mobley several details of technique which I have found useful in my work and which I feel could increase further the finesse and margin of safety of his performance of those procedures.' Is that a correct reading?
 {¶ 55} "A. Yes.
 {¶ 56} "Q. Could you describe for me what details of technique that you shared with Dr. Mobley to improve his technique in laparoscopic cholecystectomy?
 {¶ 57} "A. I recall mentioning two such details. One was that the skin incisions at the trocar placement be made of adequate length so that the trocar is not impeded unnecessarily in its entry through the abdominal wall. And the other was encouragement to be diligent in exposure of the common bile duct for positive identification."
 {¶ 58} While the trial court did allow evidence of the observations, suggestions and recommendations made by Dr. Steinbrecher and Dr. Brubaker in their letters, the trial court excluded evidence that Dr. Mobley's proctorship was a result of his surgical complications in laparoscopic cholecystectomies and common bile duct injuries in prior incidents, as unfairly prejudicial. Consistent with our disposition of Lumpkin's First Assignment of Error, we conclude that the trial court did not abuse its discretion in excluding evidence of prior incidents of bad outcomes with laparoscopic cholecystectomies, as unfairly prejudicial.
 {¶ 59} A fair inference of medical malpractice from prior, similar bad outcomes in similar medical procedures would seem to require, at a minimum, some expert testimony that the frequency of bad outcomes exceeds the statistical norm that would be expected in the absence of malpractice. Evidence of this kind, while not necessarily sufficient, by itself, to prove malpractice, would appear to support a fair, reasonable inference of malpractice that would make it probative and admissible. In the case before us, there was no evidence, or proffer of evidence, to establish that Dr. Mobley's frequency of bad outcomes in similar surgeries exceeded the statistical norm that could be expected in the absence of malpractice. Indeed, the letter of Dr. Riffell, cited by Lumpkin, suggests the contrary.
 {¶ 60} Lumpkin's Second Assignment of Error is overruled.
 III {¶ 61} Both of Lumpkin's Assignments of Error having been overruled, the judgment of the trial court is affirmed.
Wolff and Young, JJ., concur.