DECISION AND JUDGMENT ENTRY
{¶ 1} Appellants, Hannah D'Amore, and her parents, Andrew and Tarmara D'Amore, appeal adverse judgments in the Lucas County Court of Common Pleas in a medical malpractice action they brought against appellee, Michael Cardwell, M.D. They claim that Hannah D'Amore suffered permanent brachial plexus nerve injuries at birth due to the mismanagement by appellee of shoulder dystocia during delivery. Shoulder *Page 2 
dystocia is a complication during childbirth where a baby's shoulder becomes caught in the birth canal after the head has delivered.
 {¶ 2} Appellants' claims include a medical malpractice claim by Hannah D'Amore and derivative claims by her parents for loss of consortium and medical expenses. The trial court ruled that the parents' claims were barred by the statute of limitations and granted appellee's partial motion for summary judgment on the parents' claims on January 3, 2006. Hannah D'Amore's malpractice claim was tried to a jury. Trial concluded on April 12, 2006. The jury answered a special interrogatory and found that appellee was not negligent. It returned a verdict in favor of appellee.
 {¶ 3} The trial court subsequently entered judgment in favor of appellee pursuant to the jury verdict. The trial court also denied a post-trial motion for judgment notwithstanding the verdict or alternatively for a new trial. This appeal followed as to all appellants' claims.
 {¶ 4} Appellants assert seven assignments of error on appeal:
 {¶ 5} "I. The trial court erred when it denied appellants' pretrial motion to preclude testimony of defense experts Gherman and Landon and request for hearing, and permitted said experts to give testimony at trial regarding an alternative cause of appellant's permanent brachial plexus injury. (appellants' 3/17/06 Mot. To Preclude Test.; appellants' 3/31/06 Supp. Evidence in Support of Mot. To Preclude Test.; appellee's 3/31/06 Opp. To Mot. To Preclude Test.; Transcript 414, 418-419, 714-715.) *Page 3 
 {¶ 6} "II. The trial court erred in refusing to allow evidence of other similar permanent brachial plexus injuries incurred by children also delivered by appellee as causation and/or rebuttal evidence at trial. (appellee's 3/20/06 Mot. In Lim. re Other injuries; appellants' 3/31/06 Opp. to Mot. in Lim. re Other injuries; transcript 8-84; 482-484.
 {¶ 7} "III. The trial court erred in dismissing appellants' derivative claims and not permitting evidence of Hannah D'Amore's medical bills at trial. (appellee's 11/17/05 Mot. for Part. Sum. Judg.; appellants' 12/1/05 Opp. To Mot. for Part. Sum. Judg.; appellee's 12/12/05 Reply; 1/3/06 Court Order; appellee's 3/24/06 Mot. in Limine re Med. Bills; appellants' 3/29/06 Opposition to Mot. in Limine re Med. Bills; transcript 195-196, 279-280, 603).
 {¶ 8} "IV. The trial court erred when it refused to instruct the jury that since appellee asserted an alternative cause of the injury, he must establish to a reasonable degree of medical probability that this alleged alternative cause proximately resulted in harm to appellant. (appellants' 3/24/06 Prop. Jury Inst.; transcript 789-790.
 {¶ 9} "V. The trial court erred in not giving a res ipsa loquitor instruction in light of the testimony of appellants' experts that the injury does not and would not have occurred if ordinary care had been observed. (appellants' 3/24/06 Prop. Jury Inst.; transcript 789-790.)
 {¶ 10} `VI. The trial court erred when it denied appellants' Motion for Directed Verdict at the close of the appellee's case. (transcript 714-715). *Page 4 
 {¶ 11} "VII. The trial court erred when it denied appellants' Motion for Judgment Not Withstanding the Verdict, or in the Alternative, a New Trial. (appellants' 6/20/06 Mot. for JNOV/New Trial; appellee's 7/17/06 Opp. To Mot. for JNOV/New Trial; appellants' 7/16/06 Rely [sic]; 10/3/06 Order."
 {¶ 12} The brachial plexus is a bundle of nerves that connects the spinal cord to the shoulder and arm. Appellants claim that appellee caused permanent brachial plexus injuries to Hannah D'Amore by employing excess lateral traction after the existence of shoulder dystocia became apparent during delivery. In this context, excess lateral traction involves force applied by the delivering physician to the head to assist delivery. "Lateral" refers to the angle of force in relation to the long axis of the baby's spine.
 {¶ 13} At trial, the parties agreed that only gentle traction is to be employed where shoulder dystocia has occurred and that use of excess lateral traction during shoulder dystocia can cause brachial plexus injuries. They also agreed that use of excess lateral traction by a delivering physician, in a delivery where shoulder dystocia has occurred, would constitute a breach of the physician's professional duty of care.
 {¶ 14} At trial, both appellee and his assisting resident, Dr. Benjamin A. White, D.O., denied that appellee employed excess lateral traction in the delivery of Hannah D'Amore. They testified that appellee employed two recognized and accepted maneuvers, McRoberts positioning and suprapubic pressure, to relieve the shoulder dystocia and to deliver Hannah D'Amore without use of excess lateral traction. Appellee *Page 5 
further testified that delivery occurred approximately one minute after the shoulder dystocia was first encountered.
 {¶ 15} Appellants have argued that the severity of Hannah D'Amore's brachial plexus injury was further evidence that only excess lateral traction by appellee could have caused the injury. Appellants contend that Hannah D Amore suffered a nerve root avulsion injury.[1]
 {¶ 16} It was not disputed at trial that Hannah suffered a permanent brachial plexus injury. Dr. Saleh M. Shenaq, M.D., was identified at trial as a plastic and reconstructive surgeon with extensive experience in brachial plexus and peripheral nerve surgery. Dr. Shenaq treated Hannah D'Amore and performed reconstructive surgery for her injuries. Dr. Shenaq testified that it was his opinion that Hannah D'Amore suffered a permanent brachial plexus injury.
 {¶ 17} As to the specific nature of the injury at different nerve root levels, however, his testimony was less clear. We agree with appellee that Dr. Shenaq's testimony could be interpreted as inconsistent and contradictory as to the specific nature of nerve root injury at different nerve root levels. On cross-examination, Dr. Shenaq agreed with appellee that there was no complete nerve root avulsion at any of the involved nerve roots. *Page 6 
 {¶ 18} In view of the nature of the testimony, we believe it was a jury question as to the nature of specific nerve root injuries sustained by Hannah D'Amore, other than the fact that she suffered a permanent injury and did not have a complete nerve root avulsion.
 {¶ 19} The cause of the brachial plexus injury was highly disputed at trial and the focus of opposing expert witness testimony.
 Evid.R. 702 and Daubert Objections to Admissibility of Expert Witness Testimony {¶ 20} In Assignment of Error No. I, appellants assert that the trial court erred in failing to exclude trial testimony of two defense expert witnesses — Robert A. Gherman, M.D.[2] and Mark B. Landon, M.D.[3]
on the existence of alternative causes of brachial plexus injuries at childbirth where shoulder dystocia in encountered other than excess lateral traction by the physician delivering the baby. Appellants assert that the testimony should have been excluded for lack of scientific reliability under both Evid.R. 702 and Daubert v. Merrill DowPharmaceuticals (1993), 509 U.S. 579 analysis.
 {¶ 21} In the motion in limine, appellants contended that "[f]or over 100 years, the medical literature has recognized that brachial plexus injuries are caused by excessive traction applied by the physician (i.e. pulling too hard) when shoulder dystocia is *Page 7 
encountered." Appellants argued that scientific opinion did not support the existence of any other alternative cause. Appellants also claimed that the evidence established that Hannah suffered a nerve root avulsion injury and that the severity of the injury further supported their argument.
 {¶ 22} Drs. Gherman and Landon both testified that excess lateral traction is not the sole cause of brachial plexus injuries and that brachial plexus injuries can be caused by in utero forces. At trial, both were asked hypothetical expert opinion questions as to the cause of the brachial plexus injury to Hanna D'Amore based upon the assumption that appellee did not apply excess lateral traction in the delivery of Hannah D'Amore. In response to the hypothetical question, Dr. Gherman testified that it was his opinion that the cause of the brachial plexus injury was the shoulder dystocia itself, not any action or failure to act by appellee or the attending resident.
 {¶ 23} Dr. Landon testified that brachial plexus injuries "can occur during the birthing process before the shoulder dystocia actually is apparent or recognized or before an obstetric attempt to disempact the shoulders." When asked the same hypothetical question as Dr. Gherman, Dr. Landon testified that in his opinion "neither Dr. Cardwell or any health care provider caused the brachial plexus injury."
 {¶ 24} The defense experts, however, did not dispute that excess lateral traction had been treated in the past as the known cause of brachial plexus injuries in childbirths complicated by shoulder dystocia. Dr. Gherman testified: *Page 8 
 {¶ 25} "Well, I think for many years until we really scientifically studied this that there was an opinion that these were caused by excessive lateral traction provided by the living provider. Over the last 15 or 20 years there have been different links of evidence that have disproven that that is the only cause, that there are many different causes of these types of injuries."
 {¶ 26} Appellants disputed at trial that there is any scientifically reliable basis to conclude that there was any cause other than excess lateral traction for permanent brachial plexus injuries of the type suffered by Hannah D'Amore.
 {¶ 27} "Decisions regarding the admissibility of evidence are within the broad discretion of the trial court. State v. Hymore (1967), 9 Ohio St.2d 122,128, 38 O.O.2d 298, 224 N.E.2d 126. A decision to admit or exclude evidence will be upheld absent an abuse of discretion.O'Brien v. Angley (1980), 63 Ohio St.2d 159, 164-165, 17 O.O.3d 98,407 N.E.2d 490." Beard v. Meridia Huron Hosp., 106 Ohio St.3d 237,2005-Ohio-4787, ¶ 20.
 {¶ 28} "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219, quoting State v. Adams (1980), 62 Ohio St.2d 151, 157.
 {¶ 29} Evid.R. 702 provides:
 {¶ 30} "A witness may testify as an expert if all of the following apply: *Page 9 
 {¶ 31} "(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;
 {¶ 32} "(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;
 {¶ 33} "(C) The witness' testimony is based on reliable scientific, technical or other specialized information. To the extent that the testimony reports the result of a procedure, test, or experiment, the testimony is reliable only if all the following apply:
 {¶ 34} "(1) The theory upon which the procedure, test, or experiment is based is objectively verifiable or is validly derived from widely accepted knowledge, facts or principles;
 {¶ 35} "(2) The design of the procedure, test, or experiment reliably implements the theory;
 {¶ 36} "(3) The particular procedure, test, or experiment was conducted in a way that will yield an accurate result."
 {¶ 37} In Daubert, the United States Supreme Court explained that a trial court must act as a "gatekeeper" to assure both the relevance and reliability of expert witness testimony before it is admitted into evidence at trial. The court listed factors a trial court may consider in determining whether expert testimony is relevant and reliable. The Ohio Supreme Court adopted the Daubert analysis in Miller v. BikeAthletic Co. (1978), 80 Ohio St.3d 607 and outlined the inquiry to be conducted: *Page 10 
 {¶ 38} "In evaluating the reliability of scientific evidence, several factors are to be considered: (1) whether the theory or technique has been tested, (2) whether it has been subjected to peer review, (3) whether there is a known or potential rate of error, and (4) whether the methodology has gained general acceptance. Id. [Daubert v. Merrell Dow Pharmaceuticals, Inc.], at 593-594." Miller v. Bike Athletic Co.,80 Ohio St.3d at 611.
 {¶ 39} The factors, however, are not a "definitive checklist or test." Daubert, 509 U.S. at 594. The inquiry is not rigid, but is "flexible." Id. In Terry v. Caputo, 115 Ohio St.3d 351, 2007-Ohio-5023, the Ohio Supreme Court further explained the inquiry required:
 {¶ 40} "The test for reliability requires an assessment of the validity of the expert's methodology, by applying with flexibility several factors set forth in Daubert. 509 U.S. at 592-593,113 S.Ct. 2786, 125 L.Ed.2d 469. The trial court should first assess whether the method or theory relied upon has been tested. Id. at 593,113 S.Ct. 2786, 125 L.Ed.2d 469. Next, it should consider whether the theory has been the subject of peer review, and then whether the method has a known or potential error rate. Id. at 593-594, 113 S.Ct. 2786,125 L.Ed.2d 469. Finally, Daubert instructs trial courts to look at whether the theory has gained general acceptance in the scientific community. Id. at 594, 113 S.Ct. 2786, 125 L.Ed.2d 469. None of these factors, of course, is dispositive of the inquiry, and when gauging the reliability of a given expert's testimony, trial courts should focus "solely on principles and methodology, not on the conclusions" generated. Id. at 595, 113 S.Ct. 2786, 125 L.Ed.2d 469." Terry v. Caputo, at ¶ 25. *Page 11 
 {¶ 41} Prospective testing of the in utero causation theory of brachial plexus injury is unavailable as it appears impossible to conduct such testing without injuring the subject. Appellee asserts that the in utero causation theory is scientifically based upon a retrospective review of medical records. Appellee contends retrospective studies have reported the occurrence of brachial plexus injuries where excess lateral traction could not have been the cause, listing as examples head first deliveries without traction, breach deliveries where the baby's feet are delivered first, and cesarean deliveries involving surgical removal of the baby without head traction.
 {¶ 42} Appellants argue in response that the retrospective analysis is inherently flawed due to an "inherent ascertainment bias" and that the in utero causation theory has not been scientifically tested.
 {¶ 43} The parties agree that prospective and objective evidence of brachial plexus injury without excess lateral traction does exist even where the delivery is not complicated by shoulder dystocia. A well known example is a peer review report of a delivery at Johns Hopkins.[4] At Johns Hopkins a mother decided to have her delivery videotaped under circumstances where she wanted no physician involvement in the *Page 12 
delivery unless the child was in peril. Stuart C. Edelberg, M.D.[5], one of appellants' experts, testified at trial concerning the incident:
 {¶ 44} "A. It was a unique situation.
 {¶ 45} "Q. And they videotaped it?
 {¶ 46} "A. They videotaped it.
 {¶ 47} "Q. What they found there was a brachial plexus injury which you identified after spontaneous vaginal delivery without a shoulder dystocia?
 {¶ 48} "A. That is correct.
 {¶ 49} "* * *
 {¶ 50} "Q. And in this article, that described this phenomena that is captured in the videotape, Dr. Allen suggested that the most biologically plausible explanations for temporary injury unrelated to clinic traction must consider the physical reports of the brachial plexus in utero, physicians, and the mechanical forces of labor, is that right?
 {¶ 51} "A. That's correct.
 {¶ 52} "Q. Up to May 2005, Dr. Edelberg, prior to May of 2005 Dr. Edelberg didn't believe that in uteral forces could create a brachial plexus injury?
 {¶ 53} "A. A permanent one, right, I still believe that, but they do. They are now ascribed to a transient injury. *Page 13 
 {¶ 54} "Q. But, Doctor, listen to my question. What I asked you was, prior to whenever it was, May of 2005 Dr. Edelberg did not believe that uterine forces were capable of creating a brachial plexus injury?
 {¶ 55} "A. That is correct and that's what the article dealt with.
 {¶ 56} "Q. Temporary or permanent?
 {¶ 57} "A. Temporary.
 {¶ 58} "Q. Now, you didn't believe that in uterine forces could create any kind of brachial plexus injury?
 {¶ 59} "A. I'm not sure at this moment, but I'll accept it.
 {¶ 60} "Q. And you accept it because it was seen on a videotape?
 {¶ 61} "A. That is correct." The incident did not involve a permanent brachial plexus injury.
 {¶ 62} Appellants do not dispute that the in utero alternative cause theory is supported by peer reviewed articles. Defense expert, Dr. Robert Gherman, is a Board Certified physician in maternal fetal medicine and obstetrics and gynecology. Dr. Gherman testified to authorship of approximately 50 peer reviewed articles with approximately half dealing with shoulder dystocia and/or brachial plexus palsy. His curriculum vitae, entered into evidence, provides a listing of the articles. *Page 14 
 {¶ 63} Dr. James O'Leary[6], an expert for appellants, identified Dr. Gherman as one of a small group of authors who have written as to a maternal expulsive force theory as a cause to brachial plexus injuries. Appellants' experts claim that the in utero causation or the maternal expulsive force theory is only a hypothesis as to the cause of brachial plexus injury and that the hypothesis needs to be investigated further and proven.
 {¶ 64} The 22nd edition of Williams Obstetrics now acknowledges the role of forces other than traction in the cause of brachial plexus injuries.[7] The American College of Obstetricians and Gynecologists ("ACOG") issued a practice bulletin in 2002 that recognized that "[d]ata suggest that a significant proportion (34-47%) of brachial plexus injuries are not associated with shoulder dystocia; in fact, 4% occur after Cesarean delivery."[8]
 {¶ 65} Here, appellee denied use of excess lateral traction in the delivery. He was supported in his contention by the testimony of the attending resident physician. Dr. Edelberg, an expert for appellants, admitted at trial that he could not entirely rule out endogenous forces as being the cause of Hannah D'Amore's injuries.[9] *Page 15 
 {¶ 66} The trial court's role is not to evaluate which competing scientific analysis or conclusion is correct. Under Daubert and Evid.R. 702, the trial court is to determine whether expert opinion testimony is sufficiently relevant and reliable to be admitted into evidence for jury consideration. Where the evidence is admitted, it is for the jury to decide the weight to give such testimony. It remains the prerogative of the jury to reject expert evidence "for any number of reasons" including unreliability. State v. Williams (1983), 4 Ohio St.3d 53, 59.
 {¶ 67} We conclude that the trial court did not abuse its discretion in overruling the motion in limine of appellants and in permitting Drs. Gherman and Landon to testify on behalf of appellee regarding the in utero causation theory of brachial plexus injuries and their opinions as to an alternative cause of the injury to Hannah D'Amore other than excess lateral traction. Appellants' Assignment of Error No. I is not well-taken.
 {¶ 68} To facilitate consideration of the assignments of error, we consider the remaining assignments of error out of turn.
 Res Ipsa Loquitur {¶ 69} Under Assignment of Error No. V, appellants argue that the trial court erred in failing to provide a jury instruction on res ipsa loquitur. The proposed instruction provided in pertinent part:
 {¶ 70} "* * *You may, but are not required to find that the Defendant was negligent if you decide by the greater weight of the evidence that: *Page 16 
 {¶ 71} "(1) the procedure or occurrence alleged to have resulted in injury to the plaintiff was in the exclusive control of the defendant(s) at the time of injury; and
 {¶ 72} "(2) the injury to the plaintiff occurred under circumstances where in the ordinary course of events the injury would not have happened if the defendant(s) had exercised reasonable care."
 {¶ 73} In Jennings Buick, Inc. v. Cincinnati (1980),63 Ohio St.2d 167, 171 the Ohio Supreme Court stated: "Where it has been shown by the evidence adduced that there are two equally efficient and probable causes of the injury, one of which is not attributable to the negligence of the defendant, the rule of res ipsa loquitur does not apply." This is such a case. In this case the jury was presented with evidence supporting alternative verdicts depending on whether it determined the cause of Hannah D'Amore's injuries to have been the use of excess lateral traction by appellee or in utero forces, not involving negligence by appellee. Accordingly, res ipsa loquitur does not apply and the trial court did not err in denying the requested jury instruction. Appellants' Assignment of Error No. V is not well-taken.
 Motions for Directed Verdict and JNOV or for New Trial {¶ 74} Under Assignments of Error Nos. VI and VII, appellants argue that the trial court erred in failing to sustain appellants' motions for a directed verdict (Assignment of Error No. VI) and for judgment notwithstanding the verdict (JNOV) or alternatively for a new trial (Assignment of Error No. VII). A trial court is to apply the same standard in ruling on both types of motions. Texler v. D.O. SummersCleaners Shirt Laundry Co. *Page 17 
(1998), 81 Ohio St.3d 677, 673; Posin v. A.B.C. Motor Court Hotel,Inc. (1976), 45 Ohio St.2d 271, 275.
 {¶ 75} The standard was summarized by the Ohio Supreme Court inPosin v. A.B.C. Motor Court Hotel, Inc.:
 {¶ 76} "The test to be applied by a trial court in ruling on a motion for judgment notwithstanding the verdict is the same test to be applied on a motion for a directed verdict. The evidence adduced at trial and the facts established by admissions in the pleadings and in the record must be construed most strongly in favor of the party against whom the motion is made, and, where there is substantial evidence to support his side of the case, upon which reasonable minds may reach different conclusions the motion must be denied. Neither the weight of the evidence nor the credibility of the witnesses is for the court's determination in ruling upon either of the above motions." Id. (citations omitted).
 {¶ 77} There was a dispute of fact at trial as to whether appellee applied excess lateral traction during delivery once shoulder dystocia was apparent. Both appellee and the attending resident testified that he did not. The appellee admitted at trial that he would have been negligent if he did. The parties each presented conflicting expert testimony on whether a brachial plexus injury of the type suffered by Hannah D'Amore must have been caused by use of excess lateral traction; that is, whether science has established that the sole cause of such injuries is use of excess lateral traction in a shoulder dystocia setting. *Page 18 
 {¶ 78} Both defense experts testified that, assuming appellee was correct that he did not apply excess lateral traction in the delivery, appellee did not cause the brachial plexus injuries to Hannah D'Amore. Dr. Gherman testified that the specific cause was the shoulder dystocia itself Dr. Landon testified that brachial plexus injuries can occur before the existence of shoulder dystocia has been discovered and without traction by the physician.
 {¶ 79} Construing the evidence most favorably to appellee, we conclude there was substantial competent evidence to support the contentions of appellee that he did not apply excess lateral traction, that a cause other than application of excess lateral traction was the cause of injury, and that appellee was not negligent.
 {¶ 80} Similar conflicting expert testimony was considered in a shoulder dystocia medical malpractice claim by the Eleventh District Court of Appeals in Knapp v. Northeastern Ohio Obstetricians andGynecologists, Inc., 11th Dist. No. 2002-P-0005, 2003-Ohio-3873. The court of appeals affirmed denial of the plaintiff's motion for a directed verdict against the defendant-physician, holding that there was "sufficient credible evidence to permit reasonable minds to come to different conclusions on the issue of causation." Id., at ¶ 31.
 {¶ 81} We conclude that the trial court did not err in overruling the motions for a directed verdict and motion for JNOV or alternatively for a new trial. The jury verdict is supported by substantial evidence upon which reasonable minds could reach different conclusions. Assignments of Error VI and VII are not well-taken. *Page 19 
 Proposed Jury Instruction under Stinson v. England {¶ 82} In Assignment of Error No. IV, appellants argue that the trial court erred in failing to instruct the jury of the foundational requirements for admissibility of expert witness testimony under the Ohio Supreme Court's opinion in Stinson v. England (1994),69 Ohio St.3d 451. Appellants proposed a jury instruction on medical malpractice that concluded with the statement: "If the Defendant offers an alternative explanation as to the cause of an injury, the Defendant bears the burden of proof to establish that this alleged cause proximately resulted in harm to Plaintiff."
 {¶ 83} Stinson v. England dealt with admissibility of evidence by the defense in a medical malpractice action of claimed alternative causes of a patient's injury other than the negligence of the treating physician. In Stinson v. England, the defendant physician argued that any requirement that expert opinion be based on a medical probability standard to be admissible should be limited to where the testimony is offered by the party bearing the burden of proof on the issue. Id.,69 Ohio St.3d at 455.
 {¶ 84} The Ohio Supreme Court rejected the argument. It ruled inStinson v. England that admissibility expert testimony of alternative causes in medical malpractice actions must be expressed in terms of probability to be admissible, regardless of who bears the burden of proof on the issue at trial:
 {¶ 85} "We, therefore conclude that expert opinion regarding a causative event, including alternative causes, must be expressed in terms of probability irrespective of *Page 20 
whether the proponent of the evidence bears the burden of persuasion with respect to the issue." Id., 69 Ohio St.3d at 538.
 {¶ 86} Accordingly, the Stinson opinion did not involve any alteration of the burden of proof in medical malpractice actions. Rather, it adopted a rule on admissibility of expert opinion testimony that applies regardless of who holds the evidentiary burden on the issue at trial. The trial court properly overruled the proposed jury instruction as it proposed to shift the burden of proof of the cause of the brachial plexus injury to Hannah D'Amore from the plaintiffs-appellants to the defendant-appellee. Assignment of Error No. IV is not well-taken.
 Exclusion of Evidence of Brachial Plexus Injuries to Other Children Delivered by Appellee {¶ 87} In Assignment of Error No. II, appellants assert that the trial court erred in granting appellee's motion, in limine, to preclude testimony of permanent brachial plexus injuries suffered by other children who were delivered by appellee. The appellants renewed their request to offer the evidence at trial and the trial court excluded the testimony. They proffered evidence of injuries to two other children, named Garibaldo and Leu, both of whom had pending medical malpractice actions against appellee at the time of trial.
 {¶ 88} Appellants contended that the evidence would support a finding that appellee employed poor techniques and used excessive traction. They also contended appellants' expert would testify that it was statistically unlikely to have this many *Page 21 
permanent brachial plexus injuries in the time period without use of excess traction by appellee.
 {¶ 89} There was no determination in either of the other malpractice actions that appellee had been negligent. At the time of the D'Amore trial, both actions remained pending and neither had proceeded to judgment. One claim, Leu, involved birth of a child more than a year after Hannah D'Amore. The other, Garibaldo, involved a birth prior to the D'Amore delivery, but involved a substantially larger baby (11 lbs. 8 oz. vs. 8 lbs for Hanna D'Amore) and included use of an additional corkscrew maneuver to relieve shoulder dystocia that was not employed in the D'Amore delivery. {¶ 90} Appellee argues that the evidence was properly excluded under Evid.R. 403(A). Evid.R. 403(A) provides:
 {¶ 91} "Evid R 403 Exclusion of relevant evidence on grounds of prejudice, confusion, or undue delay
 {¶ 92} "(A) Exclusion mandatory
 {¶ 93} "Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."
 {¶ 94} As with the earlier assignments of error, this assignment of error concerns a trial court ruling on the admissibility of evidence at trial. Accordingly, we review the ruling on an abuse of discretion standard. *Page 22 
 {¶ 95} In Lumpkin v. Wayne Hosp., 2d Dist. No. 1615, 2004-Ohio-264, the Second District Court of Appeals considered an appeal of a surgical medical malpractice action where the trial court refused to admit evidence at trial of errors made in another surgery to a different patient. The plaintiff sought to introduce evidence that the defendant physician "made the same surgical `mistake' on another patient * * * a year prior to Lumpkin's surgery, using the same surgical technique used on her." Id., at ¶ 11.
 {¶ 96} The court of appeals upheld the ruling of the trial court excluding the evidence on two alternative grounds. First, the appellant had failed to make the necessary proffer of evidence to show substantial similarity of the circumstances between the prior occurrence and treatment of the plaintiff and, secondly, that even were the evidence relevant, the probative value of the evidence was substantially outweighed by the danger of unfair prejudice under Evid.R 403(A) analysis. Id., at ¶ 13-16. The court of appeals also stated that the decision to exclude the evidence was strengthened due to the fact that, as of the date of trial, there had been no finding of malpractice by the physician in the malpractice action brought by the other patient. Id., at ¶ 23.
 {¶ 97} In our view the trial court was within its discretion to exclude the evidence of two other pending malpractice claims involving brachial plexus injuries to other children delivered by appellee under Evid.R. 403(A). There had been no finding of professional negligence against appellee in either of the other claims. Consideration of other negligence claims, that remained to be proven, would have been highly prejudicial *Page 23 
to appellee in this action and risked confusion of the issues for the jury in an already complicated case. Assignment of Error No. II is not well-taken.
 Derivative Claims and Evidence of Medical Bills {¶ 98} Under Assignment of Error No. III, appellants argue that the trial court erred in dismissing the derivative claims of the appellant parents and in not permitting evidence of medical bills at trial on Hannah D'Amore's claim. The trial court granted summary judgment to appellee on the parents' derivative claims on January 1, 2006. The court ruled that the claims were barred under the one year statute of limitations for medical malpractice claims and that the parents' claims were not tolled during their daughter's minority.
 {¶ 99} Subsequently the Ohio Supreme Court issued its opinion inFehrenback v. O'Malley, 113 Ohio St.3d 18, 2007-Ohio-971. InFehrenback the court considered a certified question: "Whether the provisions of R.C. 2305.16, which toll a statute of limitations for a minor child's negligence claim, inure to the benefit of parents bringing derivative claims for loss of consortium and medical expenses by also tolling the statute of limitations for those claims." Id., at ¶ 1. (TheFehrenback case was a medical malpractice action.)
 {¶ 100} The Ohio Supreme Court answered the question in the affirmative. Id., at ¶ 22. As the parents' derivative claims here are identical to those considered in Fehrenback, the trial court erred in concluding that the parents' claims were time barred. UnderFehrenback, the statute of limitations of the D'Amore parents' derivative claims *Page 24 
were tolled during Hannah's minority. Appellants' arguments, on appeal, as to the error in failing to admit the medical bills into evidence were limited to the tolling of the statute of limitations for the parents' claims under Fehrenback
 {¶ 101} We conclude that the error was harmless, in view of the jury's determination that the primary claim, the underlying malpractice action, was without merit. Freeman v. Tillman, (1990), 6th Dist. No. L-89-242. Assignment of Error No. III is not well-taken.
 Cross-Assignment of Error {¶ 102} Appellee has asserted a cross-assignment of error, without the filing of any formal cross-appeal. Appellee asserts the following error:
 {¶ 103} "Appellee's Cross Assignment of Error: "The trial court erred by overruling Dr. Cardwell's motion for a directed verdict."
 {¶ 104} Appellee contends under the cross-assignment of error that a directed verdict should have been granted as competent evidence against him was lacking that he violated the standard of care as a physician. Appellee asserts that the only expert witness who testified that appellee breached the standard of care was Dr. Stuart Edelberg and Dr. Edelberg was not competent to testify under Evid.R. 601(D).
 {¶ 105} As we affirm the decision of the trial court in appellee's favor, we need not reach the merit of appellee's cross-assignment of error.
 {¶ 106} On consideration whereof, the court finds that substantial justice has been done the complaining parties, and that the judgments of the Lucas County Court of *Page 25 
Common Pleas are affirmed. Appellants are ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
Peter M. Handwork, J., Mark L. Pietrykowski, P.J., Thomas J. Osowik, J., CONCUR.
[1] The parties agree that a nerve root avulsion injury is the most severe type of brachial plexus injury. Where a complete avulsion has occurred, the nerve root is separated from the spinal cord.
[2] Dr. Gherman is a board certified physician in maternal fetal medicine and obstetrics and gynecology, with Prince George's Hospital Center in Cheverly, Maryland.
[3] Dr. Landon is a board certified physician in obstetrics and gynecology and maternal fetal medicine. He is a Professor and Vice Chairman of the Department of Obstetrics and Gynecology at Ohio State University and Director of Maternal Fetal Medicine and Chief of Clinical Obstetrics for the University Hospitals in Columbus, Ohio.
[4] Allen, RH, et al., Temporary Erb-Duchesse Palsy Without ShoulderDystocia or Traction to the Fetal Head, OBSTETRICS GYNECOLOGY, Vol. 105(5 Part 2), Supplement, May 2005, pp. 1210-1212.
[5] Dr. Edelberg is a physician specializing in obstetrics and gynecology and is on the staff as an obstetrician gynecologist and Associate Director of Obstetrics and Gynecology at Maryland General Hospital in Baltimore, Maryland.
[6] Dr. O'Leary is a board certified physician in obstetrics and gynecology and in maternal fetal medicine and is a published author.
[7] Cunningham, et al., Williams Obstetrics (22nd Ed.2005).
[8] ACOG Practice Bulletin, Shoulder Dystocia, Clinical Management Guidelines for Obstetrician — Gynecologists, Number 40, November 2002 at p. 2.
[9] In the questioning, endogenous forces were defined as the shear forces of labor pushing the baby through the birth canal. *Page 1