Lundberg Stratton, J.
(¶ 1} The issue before us is whether the plaintiff in this medical malpractice case was entitled to a jury instruction on the doctrine of res ipsa loquitur. The defendants-appellants argue that the plaintiff was not entitled to the instruction for two reasons: (1) the plaintiff presented testimony of expert witnesses who offered opinions on the specific act of negligence that they believe caused the injury and (2) evidence was presented on two equally efficient causes of the injury, one of which is not attributable to negligence.
{¶ 2} For the reasons that follow, we hold that the trial court properly declined to instruct the jury on the doctrine of res ipsa loquitur. Therefore, we reverse the judgment of the court of appeals and remand for further consideration of the assignments of error that the appellate court considered moot.
{¶ 3} Lurene N. Hall died on September 10, 2003, at Airón General Medical Center following a procedure performed by defendant-appellant Richard Patterson Jr., M.D., to place a dialysis catheter into her jugular vein. Prior to the procedure, Hall had a number of medical problems including high blood pressure *301 and chronic kidney disease. She began kidney dialysis in June 2003. Treatments were administered into her jugular vein through a dialysis catheter in the right side of her neck. Three months later, the catheter became infected and Hall was referred to Dr. Patterson, an interventional radiologist, who removed the catheter on September 8, 2003, without incident.[1]
{¶ 4} Two days later, on September 10, 2003, Patterson was scheduled to insert a new dialysis catheter. He chose to use the vein in the left side of Hall’s neck to avoid the infection that had been present in the vein on the right side. Using an ultrasound image to locate the vein, Patterson inserted a needle just above the collarbone. Patterson then inserted a microwire through the needle into the jugular vein toward the superior vena cava.[2] He monitored this procedure with a fluoroscope that produces real-time images of what is happening inside the patient.
{¶ 5} Patterson removed the needle, leaving the microwire in the vein. He fitted a coaxial introducer over the microwire and then removed the microwire. Next, Patterson slid a guidewire through the introducer, monitoring this process with a fluoroscope. Once the guidewire was in place, he successively inserted three dilators of increasing size over the guidewire in order to increase the size of the puncture hole created by the needle. Patterson pushed each dilator through the skin, muscle, and vein until the hole was large enough for him to implant the catheter.
{¶ 6} Shortly after the procedure was concluded, Hall complained of pain at the incision site. Patterson prescribed medication and checked her condition 15 minutes later. She was lethargic, and her skin was cool and clammy. He checked her vital signs and instructed a nurse to call Hall’s treating physician.
{¶ 7} Soon thereafter, Hall lost consciousness, and efforts to resuscitate her were unsuccessful. An autopsy revealed a laceration in the superior vena cava. As a result of the laceration, blood had leaked into the sac that surrounds the heart, which led to cardiac arrest, resulting in her death.
{¶ 8} The plaintiff-appellee, April E. Couch, administrator of the estate of Lurene N. Hall, filed this action on behalf of her mother’s estate and next of kin. The complaint alleged that Patterson had negligently performed the dialysiscatheterization procedure, causing Hall’s death.
*302 {¶ 9} At trial, the plaintiff presented two expert witnesses who testified that Patterson’s negligence proximately caused Hall’s death. Dr. Michael Foley, an interventional radiology expert, testified that Patterson’s actions fell below the standard of care as he inserted a very sharp dilator over a guidewire. According to Dr. Foley, Patterson most likely pulled the guidewire back somewhat as he advanced the dilator over it, exposing the dilator’s sharp edge, which lacerated the superior vena cava. Foley testified that, in his opinion, Patterson failed to notice the laceration as he was inserting the dilators, something that should not occur with careful monitoring of the patient. Dr. Jeffrey Kremen, a vascular surgeon, also testified that the dilator veered off course during the procedure and caused the laceration.
{¶ 10} Two expert witnesses testified on behalf of Patterson. Dr. Matt Leavitt, an interventional nephrologist, testified that a laceration was a rare complication of this procedure. He testified that an abnormality or weakness in Hall’s vessel may have made it susceptible to laceration and that in his opinion, the laceration was most likely caused by friction from an instrument rubbing along the wall of the superior vena cava. He further testified that a physician can cause a tear while performing this procedure even if his performance complies with the standard of care and that such an injury is a known possible complication of the procedure.
(¶ 11} Dr. Mark Dean, an interventional radiologist, testified that Hall’s blood vessels were likely weakened by the infection from the prior catheter or by her overall compromised medical condition and that the weak vessel was lacerated in the regular course of the procedure.
{¶ 12} At the close of all evidence, the plaintiff asked for a jury instruction on the doctrine of res ipsa loquitur. The court denied the request. The court stated that because there were multiple potential causative factors, it was “up to the trier of fact to determine which version they believe.” The jury returned a defense verdict.
{¶ 13} The plaintiff moved for a new trial on the basis that the trial court erred as a matter of law when it refused to instruct the jury on the doctrine of res ipsa loquitur. The trial court denied the motion, and the plaintiff appealed.
(¶ 14} The Ninth District Court of Appeals reversed and remanded the case for a new trial. The court concluded that the plaintiffs evidence met the requirements for an instruction on the doctrine of res ipsa loquitur and that the lower court erred by refusing to so instruct the jury.
{¶ 15} The cause is before this court upon the acceptance of a discretionary appeal. 120 Ohio St.3d 1504, 2009-Ohio-361, 900 N.E.2d 622.
*303 Evolution of Res Ipsa Loquitur
{¶ 16} Res ipsa loquitur is an evidentiary rule that permits, but does not require, a jury to draw an inference of negligence from circumstantial evidence. Fink v. New York Cent. RR. Co. (1944), 144 Ohio St. 1, 28 O.O. 550, 56 N.E.2d 456, paragraph two of the syllabus. Fink examined the historical underpinnings of the rule of res ipsa loquitur, which originated by necessity when the true cause of an occurrence was known by or could be determined by the defendant but not by the plaintiff. Id. at 5, 28 O.O. 550, 56 N.E.2d 456. Fink noted that the term first appeared in Byrne v. Boadle (Ex.1863), 2 H. & C. 722, 159 Eng.Rep.R. 299, a case in England in which a barrel of flour had rolled from a shop window and struck a passerby below. In that case, the plaintiff was unable to produce evidence to explain how or why the barrel had fallen. The court in Byrne determined that the falling barrel itself was sufficient evidence of negligence, or “res ipsa loquitur,” which, literally translated, means “the thing speaks for itself.”
{¶ 17} Seven years later, an English court applied the rule in a case where a brick had fallen upon the plaintiff from the wall of a bridge that was exclusively controlled by the defendant. Fink at 5-6, 28 O.O. 550, 56 N.E.2d 456, citing Kearney v. London B. & S.C. Ry. Co., L.R. (1870), 5 Q.B. 411. The use of the phrase spread through England and into the United States. The rule allows a common sense appraisal of the circumstances surrounding an unusual accident, permitting a jury to draw the obvious conclusion that the accident was the defendant’s fault and requiring the defendant to explain why the accident was not his fault. Wampler, Fly in the Buttermilk: Tennessee’s Desire to Dispense with Layperson Common Sense and the Medical Malpractice Locality Rule (2002), 69 Tenn.L.Rev. 385, 391.
{¶ 18} The term was first mentioned in an Ohio Supreme Court opinion in Cincinnati Traction Co. v. Holzenkamp (1906), 74 Ohio St. 379, 78 N.E. 529, a case in which a trolley pole fell on a person who was about to step onto the car. The court held that the trial court “was warranted in taking judicial notice of the fact” that a trolley pole does not break and fall in the ordinary course of events unless there was negligence in the construction or management of it and therefore the court had properly charged the jury on the maxim of res ipsa loquitur. Id. at 389, 78 N.E. 529.
{¶ 19} In Soltz v. Colony Recreation Ctr. (1949), 151 Ohio St. 503, 39 O.O. 322, 87 N.E.2d 167, this court reviewed some of its past decisions that applied the rule of res ipsa loquitur. The rule was applied most often in cases involving falling objects, passenger common carriers, or other situations that presented a dangerous threat of serious injury or death. Id. at 508, 39 O.O. 322, 87 N.E.2d 167; Worland v. Rothstein (1943), 141 Ohio St. 501, 26 O.O. 80, 49 N.E.2d 165 (window cleaner dropping a wet sponge); Walters v. Baltimore & Ohio Southwestern Ry. *304 Co. (1924), 111 Ohio St. 575, 146 N.E. 75 (high-voltage electric wires fell on a highway). See also Scrabic v. Cincinnati, New Orleans & Texas Pacific Ry. Co. (1932), 42 Ohio App. 473, 182 N.E. 528 (train derailment); Baltimore Ohio Ry. Co. v. Norcross Marble Co. (App.1923), 2 Ohio Law Abs. 104, 1923 WL 2391 (train derailment).
{¶ 20} In Loomis v. Toledo Rys. & Light Co. (1923), 107 Ohio St. 161, 140 N.E. 639, this court held that res ipsa loquitur did not apply, because the defendant had produced evidence that the accident was the result of natural causes. In Loomis, electric poles and wires fell onto the plaintiffs automobile at an intersection. The plaintiff alleged that the defendant had negligently maintained the poles; however, the defendant presented evidence that the poles fell during an unusually strong wind storm. Loomis held that res ipsa loquitur did not apply under these circumstances and that the jury was properly instructed to consider both asserted possible causes of the occurrence. Id. at 172-173, 140 N.E. 639.
{¶ 21} Historically, res ipsa loquitur was not applied in medical malpractice cases, which require a plaintiff to demonstrate by a preponderance of the evidence that the injury was the direct and proximate result of the physician’s failure to use ordinary skill, care, or diligence. Bruni v. Tatsumi (1976), 46 Ohio St.2d 127, 75 O.O.2d 184, 346 N.E.2d 673, at paragraph one of the syllabus. Generally, to make that demonstration, a plaintiff must introduce evidence of the applicable standard of the medical community and evidence that the physician negligently departed from that standard. Id. Malpractice cases often require background information on medical treatment and possible causes of injury not known to the average juror. Thus, res ipsa loquitur is usually not applicable in medical malpractice cases because a layperson cannot determine by common knowledge whether negligence occurred.
{¶ 22} In addition, courts recognize that there may be a variety of causes for an injury in a medical malpractice case, and some procedures are so inherently risky that injuries may occur even when physicians are careful. “A physician is not a warrantor of cures. If the maxim, ‘Res ipsa loquitur,’ were applicable to a case like this, and a failure to cure were held to be evidence, however slight, of negligence on the part of the physician or surgeon causing the bad result, few would be courageous enough to practice the healing art, for they would have to assume financial liability for nearly all the ‘ills that flesh is heir to.’ ” Ewing v. Goode (Cir.Ct., S.D.Ohio 1897), 78 F. 442, 443. Thus, a jury in a medical malpractice action would rarely be able to conclude, based on common experience alone, that the injury was one that did not ordinarily occur in the absence of negligence.
{¶ 23} Nevertheless, courts gradually began to allow plaintiffs to use the doctrine of res ipsa loquitur in medical malpractice cases. Initially, it was used *305 only in the cases where expert medical testimony was not necessary because the negligence was so obvious that jurors could determine from their own knowledge and common sense that the physician had been negligent — for example, when a physician failed to remove a sponge or other foreign object from the patient’s body during surgery. See, e.g., Ault v. Hall (1928), 119 Ohio St. 422, 164 N.E. 518 (failure to remove surgical sponges before the incision was closed); Bradshaw v. Wilson (1950), 87 Ohio App. 319, 43 O.O. 47, 94 N.E.2d 706 (bone fragment left in fracture site). But courts would not apply the rule if a specific act of negligence was alleged. Sieling v. Mahrer (App.1953), 113 N.E.2d 373.
{¶ 24} Later, courts expanded the use of res ipsa loquitur to cases in which a plaintiff alleged and presented evidence to prove a specific act of negligence. See Oberlin v. Friedman (1965), 5 Ohio St.2d 1, 34 O.O.2d 1, 213 N.E.2d 168, paragraph two of the syllabus (“If the allegations of the petition and the proof in support thereof call for its application, the doctrine of res ipsa loquitur may be applied even though the petition also alleges and evidence is offered to prove specific acts of negligence”); Morgan v. Children’s Hosp. (1985), 18 Ohio St.3d 185, 189, 18 OBR 253, 480 N.E.2d 464 (the use of expert testimony to establish possible specific acts of negligence does not preclude an instruction of res ipsa loquitur if otherwise justified by the circumstantial evidence adduced at trial). However, a plaintiff may not use the doctrine if its applicability is “based solely upon the fact that the treatment was unsuccessful or terminated with poor or unfortunate results.” Oberlin, paragraph three of the syllabus.
Application of Res Ipsa Loquitur
{¶ 25} In this case, the court of appeals concluded that the plaintiff was entitled to a jury instruction on res ipsa loquitur, having produced sufficient evidence to show that in the ordinary course of events, this type of injury does not occur without negligence. 2008-Ohio-4332, 2008 WL 3918068, ¶ 30, 31. The appellate court discounted the defense experts’ opinions of alternative, nonnegligent causes, holding that such testimony has no effect on a court’s determination whether to give an instruction on res ipsa loquitur. Id. at ¶ 30.
{¶ 26} A court must determine on a case-by-case basis whether the doctrine of res ipsa loquitur applies. Jennings Buick, Inc. v. Cincinnati (1980), 63 Ohio St.2d 167, 171, 17 O.O.3d 102, 406 N.E.2d 1385. We review de novo whether the evidence supported a jury instruction on the doctrine of res ipsa loquitur.
{¶27} A plaintiff must establish two elements for the doctrine of res ipsa loquitur to apply: “(1) [t]hat the instrumentality causing the injury was, at the time of the injury, or at the time of the creation of the condition causing the injury, under the exclusive management and control of the defendant; and (2) that the injury occurred under such circumstances that in the ordinary course of events it would not have occurred if ordinary care had been observed.” Hake v. *306 George Wiedemann Brewing Co. (1970), 23 Ohio St.2d 65, 66-67, 52 O.O.2d 366, 262 N.E.2d 703; Fink, 144 Ohio St. 1, 28 O.O. 550, 56 N.E.2d 456.
{¶ 28} The parties do not dispute the first requirement, that Patterson was in control of the instruments inserted into the decedent’s body. The defendants-appellants, Patterson and his employer, Radiology & Imaging Services, Inc., contend that the plaintiff failed to establish the second requirement. First, they contend that because the plaintiff presented “direct evidence” of specific acts of negligence from two medical expert witnesses, res ipsa loquitur, which permits jurors to draw an inference of negligence from circumstantial evidence, did not apply. Second, the defendants contend that defense experts testified that the laceration could have occurred in the absence of negligence and that res ipsa loquitur does not apply when the record contains evidence of two equally efficient causes of the injury, one of which is not attributed to negligence.
{¶ 29} In this case, there was no direct evidence of negligence, i.e., evidence based upon personal knowledge or observation. The plaintiffs evidence to establish medical malpractice consisted of opinions of expert medical witnesses on the appropriate standard of care and the specific cause of Hall’s injury: that Patterson negligently withdrew the guidewire, allowing a sharp dilator to lacerate the superior vena cava. We have held that a plaintiffs introducing expert testimony regarding possible specific acts of negligence does not preclude an instruction on res ipsa loquitur “if otherwise justified by the circumstantial evidence adduced at trial.” Morgan v. Children’s Hosp., 18 Ohio St.3d at 189, 18 OBR 253, 480 N.E.2d 464. Consequently, the fact that the plaintiff presented evidence from expert witnesses on what they believed specifically caused Hall’s injury does not prevent the plaintiff from also relying on the rule of res ipsa loquitur if otherwise justified by circumstantial evidence.
{¶ 30} In this case, the plaintiff relied solely upon her expert witnesses to establish the second requirement of res ipsa loquitur. In addition to testifying about a specific negligent act, both witnesses testified that a laceration of the superior vena cava would not occur in the ordinary course of this procedure without negligence. The use of expert testimony in a medical malpractice case to establish that an injury occurred under such circumstances that in the ordinary course of events it would not have occurred if ordinary care had been observed does not disqualify such a case for application of the doctrine of res ipsa loquitur. Morgan v. Children’s Hosp. at syllabus. However, defense expert witnesses testified that there could be nonnegligent causes of the injury. They testified that a tear in a blood vessel is a known complication of this procedure, and the poor condition of Hall’s blood vessels may have made them susceptible to a laceration. They also testified that the injury may have occurred even if Patterson’s actions complied with the standard of care. Thus, the defendants *307 argue, the record contains evidence of two equally efficient causes of the injury, so res ipsa does not apply, citing Jennings Buick, Inc. v. Cincinnati, 63 Ohio St.2d 167, 17 O.O.3d 102, 406 N.E.2d 1385.
{¶ 31} In Jennings Buick, the plaintiffs expert witness attributed a water-main break to the city’s negligence while the defense theory attributed the break to natural causes. This court concluded that both were equally probable causes and thus the trial court did not err in refusing to give the instruction on res ipsa loquitur. Jennings Buick held that “[w]here it has been shown by the evidence adduced that there are two equally efficient and probable causes of the injury, one of which is not attributable to the negligence of the defendant, the rule of res ipsa loquitur does not apply.”
{¶ 32} The court of appeals attempted to distinguish this case from Jennings Buick, reasoning that the plaintiffs expert in Jennings agreed that the defense theory was equally probable, whereas, in this case, the plaintiffs experts testified that the injury was more likely caused by negligence and rejected the defense theories.
{¶ 33} The appellate court’s interpretation of Jennings Buick is mistaken. In that case, the court stated that “the evidence tended to show that there were equally probable causes of the break which were not attributable to the negligence of the city.” Id., 63 Ohio St.2d at 173, 17 O.O.3d 102, 406 N.E.2d 1385. “[T]here was evidence presented to the trier of the facts which would have allowed the jury to find that one or another potential cause of the injury not attributable to the negligence of the city was equally as probable as was a cause attributable to the negligence of the city.” Id. at 174, 17 O.O.3d 102, 406 N.E.2d 1385. Thus, because there were opposing opinions on causation — at least one of which was not attributable to negligence — the rule of res ipsa loquitur did not apply.
{¶ 34} We hold that the reasoning of Jennings Buick applies here. This case involved a complicated medical procedure, and the expert witnesses presented' opposing opinions regarding the cause of Hall’s injury, one not attributable to negligence. The experts agreed that perforation of a blood vessel is a known risk and complication of this procedure even when performed in compliance with the standard of care. Thus, it is not a clear case of negligence. Instead, the trial court was presented with equally probable causes of the injury, which meant that the cause of the injury was a question for the jury to determine. Although the plaintiff discounted the defense theory as a “far-fetched alternative,” the plaintiff acknowledges that the credibility of the witnesses is a question for the jury to assess. Thus, under the circumstances of this case, the trial court properly refused to instruct the jury on res ipsa loquitur.
*308 {¶ 35} This holding is consistent with the doctrine of res ipsa loquitur, which was “founded upon an absence of specific proof concerning acts or omissions which would constitute negligence.” Morgan v. Children’s Hosp., 18 Ohio St.3d at 192, 18 OBR 253, 480 N.E.2d 464 (Holmes, J., dissenting). Under the evidence presented in this case, there are two equally efficient and probable causes of the injury; thus, it would have been improper to instruct the jury that it could infer negligence. Based on the evidence produced, this is not a situation where it can be said that “the thing speaks for itself.” Rather, this case represents the classic battle between expert witnesses. As the court of appeals stated, “The trier of fact must weigh the evidence and decide which experts to believe.” 2008-Ohio-4332, 2008 WL 3918068, ¶ 30. Consequently, the trial court properly declined to instruct the jury on the doctrine of res ipsa loquitur.
Conclusion
{¶ 36} For the foregoing reasons, we reverse the judgment of the court of appeals and remand the cause for consideration of the assignments of error that were considered moot.
Judgment reversed.
O’Connor and O’Donnell, JJ., concur.
Lanzinger, J., concurs in judgment only.
Moyer, C.J., and Pfeifer and Cupp, JJ., dissent.

. An interventional radiologist performs procedures on patients that involve inserting wires and other devices into the body while monitoring the device’s movement through the body with the use of x-ray images.

. The superior vena cava is a large vein that receives blood from the head, neck, arms, and thorax and delivers it to the right atrium of the heart. Stedman’s Medical Dictionary (26th Ed.1995) 1926.