[Cite as *Davis v. Cuyahoga Metro. Hous. Auth.*, 2012-Ohio-3077.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 97356**

---

# LAWANDA DAVIS, ET AL.

PLAINTIFFS-APPELLANTS

vs.

# CUYAHOGA METROPOLITAN HOUSING AUTHORITY

DEFENDANT-APPELLEE

---

**JUDGMENT:**
AFFIRMED

---

Civil Appeal from the
Cuyahoga County Common Pleas Court
Case No. CV-649853

**BEFORE:** S. Gallagher, J., Jones, P.J., and Keough, J.

**RELEASED AND JOURNALIZED:** July 5, 2012

**ATTORNEYS FOR APPELLANTS**

Sam A. Zingale
700 Rockefeller Building
614 Superior Avenue N.W.
Cleveland, OH   44113

Keith E. Belkin
20600 Chagrin Boulevard, #1111
Shaker Heights, Ohio   44122-5334


**ATTORNEYS FOR APPELLEE**

Timothy A. Marcovy
Michael S. Lewis
Aubrey B. Willacy
Willacy, LoPresti & Marcovy
330 Western Reserve Building
1468 West Ninth Street
Cleveland, Ohio   44113

SEAN C. GALLAGHER, J.:

{¶1} Appellants, Lawanda Davis and her young child R.D., appeal the trial court's decision granting summary judgment in favor of Cuyahoga Metropolitan Housing Authority ("CMHA") on appellants' claims. For the following reasons, we affirm the decision of the trial court.

{¶2} Appellants moved into a CMHA-managed apartment at the end of March 2006. Before that, CMHA repaired the non-operational furnace by replacing the draft motor, gas valve, and thermostat. CMHA's maintenance technician, William Taylor, performed the repairs, but did not recall working on that particular furnace. CMHA provided the maintenance records indicating Taylor performed the work. Taylor testified that after completing the repairs, his normal practice was to cycle the furnace through a progression to ensure the repairs were effective and proper. By all accounts, the furnace was operational when the appellants moved into the apartment. The furnace was located inside a closet of the home, although Lawanda did not know if the closet door was locked.

{¶3} After moving into the apartment, Lawanda noticed a smell emanating from the furnace every time she turned it on. She ran the furnace briefly and shut it off once the smell was detected. Lawanda never requested to have the furnace serviced. An unidentified CMHA maintenance employee was called to the apartment to fix some

blinds and the stove sometime between April and October 2006. Lawanda inquired about the smell from the furnace and was told by the unidentified employee that the problem was most likely dirt in the vents. She attempted to sweep the vents.

{¶4} On October 17, 2006, appellants returned home and started the furnace. Lawanda let the furnace run despite the smell. After about an hour, R.D. began crying. After a brief moment of Lawanda trying to diagnose him, R.D. passed out. Lawanda removed him from the apartment, called for help, and emergency personnel responded. An unidentified fireman told Lawanda that the carbon monoxide level in the apartment was three times the normal level. According to Lawanda, R.D. underwent treatment for carbon monoxide exposure.

{¶5} Lawanda's and Taylor's depositions were included with CMHA's motion for summary judgment. Taylor stated that the smell Lawanda encountered from the vents could not be carbon monoxide. Carbon monoxide, a natural byproduct of burning natural gas for heat, is odorless. Taylor claimed that the most likely cause of the smell was dirt or dust in the air ducts. Taylor could not remember whether the furnace needed repairs after the October 17 incident, but stated that the most common causes of carbon monoxide exhausting into the home from a furnace is a misaligned flue pipe or a significant blockage in the chimney, like a dead animal. Nothing affirmatively indicates whether the furnace was serviced after October 17, 2006. Taylor was not responsible for maintaining the chimney, and appellants' furnace shared a common chimney with several other apartments.

{¶6} In their complaint, appellants advanced several causes of action, including a claim for negligence and negligence per se pursuant to R.C. 5321.04(A)(4). Both claims were based on the failure of CMHA to properly maintain or repair the furnace, which was the alleged source of the elevated carbon monoxide levels. Appellants' complaint also included a claim based on CMHA's failure to provide a carbon monoxide detector.

{¶7} The trial court granted CMHA's motion for summary judgment upon all claims. CMHA, in pertinent part, argued that appellants failed to produce expert testimony establishing that the furnace was defective or was the cause of the elevated carbon monoxide levels. Appellants timely appealed the trial court's decision, raising three assignments of error, all of which attack the trial court's summary judgment decision regarding appellants' negligence and negligence per se claims. For the following reasons, appellants' assignments of error are without merit.

{¶8} Appellate review of summary judgment is de novo, governed by the standard set forth in Civ.R. 56. *Comer v. Risko*, 106 Ohio St.3d 185, 2005-Ohio-4559, 833 N.E.2d 712, ¶ 8. We afford no deference to the trial court's decision and independently review the record to determine whether summary judgment is appropriate. *Hollins v. Shaffer*, 182 Ohio App.3d 282, 2009-Ohio-2136, 912 N.E.2d 637, ¶ 12 (8th Dist.). Under Civ.R. 56(C), summary judgment is proper when the moving party establishes that

> (1) no genuine issue of any material fact remains, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and construing the evidence most strongly in favor of the nonmoving party, that conclusion is

adverse to the party against whom the motion for summary judgment is made.

*State ex rel. Duncan v. Mentor City Council*, 105 Ohio St.3d 372, 2005-Ohio-2163, 826 N.E.2d 832, ¶ 9, citing *Temple v. Wean United, Inc.* , 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977). While a party requesting summary judgment bears the initial burden to show the basis of the motion, once the moving party satisfies this burden of production, the nonmoving party must offer specific facts, using the evidence allowed under Civ.R. 56(C), demonstrating a genuine issue for trial. *Dresher v. Burt*, 75 Ohio St.3d 280, 293-294, 662 N.E.2d 264 (1996).

{¶9} In order to defeat a properly supported motion for summary judgment on a negligence claim, the nonmoving party must establish that a genuine issue of material fact remains as to whether the defendant owed a duty of care, breached that duty, and proximately caused the plaintiff's injury. *Texler v. D.O. Summers Cleaners & Shirt Laundry Co.*, 81 Ohio St.3d 677, 680, 693 N.E.2d 271 (1998). In the alternative, negligence per se is "a violation of a specific requirement of law or ordinance, the only fact for determination by the jury being the commission or omission of the specific act inhibited or required." *Sabitov v. Graines*, 177 Ohio App.3d 451, 2008-Ohio-3795, 894 N.E.2d 1310 (8th Dist.), citing *Chambers v. St. Mary's School*, 82 Ohio St.3d 563, 565, 697 N.E.2d 198 (1998). In the current case, CMHA's alleged omission was the failure to maintain the furnace in violation of R.C. 5321.04(A)(4). Thus, under either the negligence or negligence per se claims, appellants needed to demonstrate the furnace was the cause of the carbon monoxide emissions based on CMHA's failure to maintain the

furnace or CMHA's breaching its duty by not discovering and remedying a defect with the furnace system. It is undisputed that CMHA was responsible for maintaining the furnace.

{¶10} CMHA argued that appellants failed to proffer expert testimony establishing the furnace caused the carbon monoxide emissions or was in such a condition to cause the elevated carbon monoxide levels in appellants' home. The only expert deposed was Taylor, CMHA's maintenance technician. Taylor stated that the only way a furnace can cause elevated carbon monoxide levels is through a misaligned flue pipe or chimney blockage, but he never testified that either condition existed with appellants' furnace. CMHA satisfied its burden of production. CMHA demonstrated the absence of evidence demonstrating the furnace was in a condition of disrepair or even the cause of the elevated carbon monoxide levels.

{¶11} Appellants claimed, in response, that the furnace was the "only instrumentality capable of producing and emitting the carbon monoxide" appellants encountered. Appellants did not support that assertion with any evidence. Because CMHA satisfied its burden, demonstrating no genuine issue of material fact, appellants must offer specific facts, using the evidence allowed under Civ.R. 56(C), demonstrating a genuine issue for trial. *Dresher*, 75 Ohio St.3d 280, 293-294, 662 N.E.2d 264.

{¶12} Appellants failed to demonstrate that CMHA breached its duty or failed to maintain the furnace. Lawanda's testimony, setting aside the hearsay issues, merely demonstrated that elevated levels of carbon monoxide were detected after R.D. passed

out.   No evidence established that the furnace was the source.   In addition, Lawanda's testimony about the smell from the vents did not demonstrate a defective condition. Taylor, who appellants qualified as an expert, stated that carbon monoxide is odorless and the smell from the furnace was unrelated to the elevated carbon monoxide levels. Nothing in the record contradicts this testimony.   Thus, appellants never demonstrated that the furnace caused the elevated carbon monoxide levels because of CMHA's failure to maintain the furnace.

{¶13} Appellants' reliance on the sequence of events — Lawanda turning on the furnace an hour prior to R.D. exhibiting symptoms — to establish a breach of duty or omission on CMHA's part is unavailing.   However unfortunate the outcome, appellants cannot rely on the inference that CMHA breached its duty or failed to act as to cause, or allow, the furnace to exhaust carbon monoxide into the home based on the sequence of events leading to R.D.'s exposure.   In order to reach the conclusion that CMHA breached its duty or failed to otherwise act, the inference, that the furnace caused the elevated levels of carbon monoxide based on the timing of R.D.'s exposure, must support another inference, that the cause of the furnace malfunction was CMHA's failure to act. This court has consistently held:

> "For the purpose of supporting a proposition, it is not permissible to draw an inference from a deduction which is itself purely speculative and unsupported by an established fact. Where an inference not supported by or drawn from a proven or known fact is indulged, and is then used as a basis for another inference, neither inference has probative value.   Such a process may be described as drawing an inference from an inference, and is not allowable.   At the beginning of every line of legitimate inferences there must be a fact, known or proved."

*Hurt v. Charles J. Rogers Transp. Co.*, 164 Ohio St. 329, 332, 130 N.E.2d 820 (1955), quoting *Indian Creek Coal & Mining Co. v. Calvert*, 68 Ind.App. 474, 119 N.E. 519, 120 N.E. 709 (2d Div.1918).

{¶14} In the alternative, appellants argue that the doctrine of res ipsa loquitur supplants their need to establish liability upon direct evidence. "Res ipsa loquitur is an evidentiary rule that permits, but does not require, a jury to draw an inference of negligence from circumstantial evidence." *Estate of Hall v. Akron Gen. Med. Ctr.*, 125 Ohio St.3d 300, 2010-Ohio-1041, 927 N.E.2d 1112, ¶ 16, citing *Fink v. New York Cent. RR. Co.*, 144 Ohio St. 1, 56 N.E.2d 456 (1944), paragraph two of the syllabus. The doctrine of res ipsa loquitur applies if

> (1) the instrumentality causing the injury was, at the time of the injury, or at the time of the creation of the condition causing the injury, under *the exclusive management and control* of the defendant; and (2) the injury occurred under such circumstances that in the ordinary course of events it would not have occurred if ordinary care had been observed.

(Emphasis added.) *Estate of Hall* at ¶ 27, citing *Hake v. George Wiedemann Brewing Co.*, 23 Ohio St.2d 65, 66-67, 262 N.E.2d 703 (1970).

{¶15} Appellants rely on the fact that CMHA is exclusively responsible for maintaining the furnace to satisfy the first prong of the res ipsa loquitur analysis. Appellants' reliance is misplaced. Being responsible for the maintenance of the furnace alone does not establish exclusive control over the instrumentality causing the injury. *See Hickey v. Otis Elevator Co.*, 163 Ohio App.3d 765, 2005-Ohio-4279, 840 N.E.2d 637, ¶ 27 (10th Dist.). The furnace was located inside the appellants' home, and there is no

evidence that CMHA limited appellants' access to the furnace. The undisputed evidence demonstrated that CMHA did not retain exclusive control over the furnace, only exclusive management. Under these circumstances, the doctrine of res ipsa loquitur is inapplicable.

{¶16} Construing the facts in a light most favorable to appellants, we find that no genuine issue of material fact existed. There was no evidence demonstrating that CMHA breached its duty or failed to maintain the furnace, and the res ipsa loquitur doctrine cannot be applied to this situation where the appellants have not established that CMHA had exclusive control over the furnace. Upon a thorough review of the record, CMHA was entitled to judgment as a matter of law, and accordingly, the trial court did not err in granting summary judgment in favor of CMHA. Appellants' three assignments of error are overruled.

{¶17} The decision of the trial court is affirmed.

It is ordered that appellee recover from appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


SEAN C. GALLAGHER, JUDGE

LARRY A. JONES, SR., P.J., and
KATHLEEN A. KEOUGH, J., CONCUR