[Cite as *Casteel v. Univ. of Akron*, 2013-Ohio-5934.]



# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

DENISE CASTEEL, et al.

    Plaintiffs

    v.

THE UNIVERSITY OF AKRON, et al.

    Defendants

Case No. 2011-12188

Judge Patrick M. McGrath

DECISION

{¶ 1} Plaintiffs brought this action alleging negligence.[1]  The issues of liability and damages were bifurcated and the case proceeded to trial on the issue of liability.

{¶ 2} This case arises from events that took place on the evening of September 19, 2007, when plaintiff attended a series of intramural flag football games located on the AstroTurf football practice field at the University of Akron (Akron) known as Jackson Field.  Plaintiff attended the games with Chris and Daniel Goodrow in order to watch their children, Christopher Casteel and Tess Goodrow, who were students at Akron, play in the intramural games.  Plaintiff had been at Jackson Field the prior week to watch her son play in an intramural game.  The AstroTurf field was surrounded by a fence and plaintiff sat in a grassy area along the eastern side of the field behind the fence.  Plaintiff sat in a folding chair, Chris Goodrow sat in a chair to her right, and there were at least 100 people watching the games in the same area.  Daniel Goodrow was

---

[1] Throughout this decision, "plaintiff" shall refer to Denise Casteel.

standing in the grassy area taking pictures during the games.  Plaintiff brought her dog, a 150 pound Great Dane, to the game, and the dog sat to her left.

{¶ 3} Tess Goodrow played in a 7:00 p.m. game between two sororities and the game took place without incident.  Plaintiff and the Goodrows remained at the field until Christopher's game began at 10:00 p.m.  During the middle of Christopher's game, both plaintiff and Chris Goodrow testified that they heard a "hissing" sound, people began yelling in fear, and people ran away from the grassy area.  Plaintiff did not know what was occurring so she and Chris Goodrow began to run away from the field.  Plaintiff admitted that when she got up, she tripped over her dog, fell to the ground, and injured her ankle.  While plaintiff was on the ground, she felt a watery mist hitting her and Daniel Goodrow informed her that the sprinkler system had turned on in the grassy area.  Plaintiff and Chris Goodrow both testified that when they first heard the hissing noise they did not know what it was and that they were frightened.  Furthermore, plaintiff testified that she was concerned by the hissing noise inasmuch as Akron had received three bomb threats in the weeks prior to September 19, 2007, and that she initially thought the noise was a bomb.

{¶ 4} In 2007, Mark Allen was employed by Akron as the manager for recreational sports programming, a position he held for 22 years.  In his employment, Allen was responsible for scheduling games on Akron's athletic fields, including intramural games.  Allen testified that he submitted weekly schedules of the athletic events to the university and that the sprinkler system should not turn on during a scheduled game.

{¶ 5} Allen was present at the intramural games on September 19, 2007, and he was positioned near the southeast gate of the practice field.  Allen saw the sprinkler system turn on in the grassy area where the spectators were sitting.  Allen testified that the football games were interrupted for a brief period of time when the sprinklers began spraying water but that the games resumed shortly thereafter.  Allen testified that when

the water began spraying, he heard playful laughing and screaming coming from the grassy area.

{¶ 6} Jim Fleming, Akron's grounds superintendent for the athletic fields, arrived at work on September 20, 2007 to find the sprinklers in the grassy area turned on. Fleming testified that there was standing water on the ground, which led him to believe that the sprinklers had been on all night. Fleming discovered that a soda can was wedged in between two components of the sprinkler system that are located in an unlocked, covered bucket in the ground: the flow valve and the solenoid. Fleming believed that this caused the sprinklers to turn on.

{¶ 7} While the testimony of plaintiff and Chris Goodrow conflicts with the testimony of Mark Allen regarding the level of fearfulness in the crowd when the sprinklers began spraying water, the court determines that the testimony of Allen is more credible. The court finds that the crowd was generally playful and not fearful when the sprinklers turned on. Additionally, the testimony of those present at the field on September 19, 2007, supports the finding that the sprinklers turned off shortly after they turned on; however, the sprinklers were still running the following morning, as Jim Fleming credibly testified. The court finds that the sprinklers turned on during the intramural games, that the games were able to resume shortly thereafter, and that the following morning Fleming found the sprinklers in the grassy area activated.

{¶ 8} Plaintiffs assert that defendants were negligent in allowing the sprinkler system to be activated during a sporting event, which resulted in plaintiff falling and injuring her ankle. Defendants assert that they did not breach any duty it owed to plaintiff and that plaintiff has failed to established proximate cause.

{¶ 9} In order for plaintiff to prevail upon her claim of negligence, she must prove by a preponderance of the evidence that defendants owed her a duty, that defendants' acts or omissions resulted in a breach of that duty, and that the breach proximately

caused her injuries. *Armstrong v. Best Buy Co., Inc.*, 99 Ohio St.3d 79, 2003-Ohio-2573, ¶ 8, citing *Menifee v. Ohio Welding Prods., Inc.*, 15 Ohio St.3d 75, 77 (1984).

{¶ 10} Under Ohio law, the duty owed by an owner or occupier of premises generally depends on whether the injured person is an invitee, licensee, or trespasser. *Gladon v. Greater Cleveland Regional Transit Auth.*, 75 Ohio St.3d 312, 315 (1996). Plaintiff was on Akron's premises for purposes that would classify her as an invitee, which is defined as a person who comes "upon the premises of another, by invitation, express or implied, for some purpose which is beneficial to the owner." *Baldauf v. Kent State Univ.*, 49 Ohio App.3d 46, 47 (10th Dist.1988). The duty owed to an invitee is one of ordinary and reasonable care to protect her from an unreasonable risk of physical harm of which defendant knew or had reason to know. *Perry v. Eastgreen Realty Co.*, 53 Ohio St.2d 51, 52 (1978); *see also Armstrong, supra,* at ¶ 5. "[T]o establish that the owner or occupier failed to exercise ordinary care, the invitee must establish that: (1) the owner of the premises or [its] agent was responsible for the hazard of which the invitee has complained; (2) at least one of such persons had actual knowledge of the hazard and neglected to give adequate notice of its existence or to remove it promptly; or (3) the hazard existed for a sufficient length of time to justify the inference that the failure to warn against it or remove it was attributable to a lack of ordinary care." *Price v. United Dairy Farmers, Inc.*, 10th Dist. No. 04AP-83, 2004-Ohio-3392, ¶ 6.

{¶ 11} Plaintiff argues that the sprinklers were activated during the flag football game due to a malfunctioning sprinkler timer, which was a breach of the standard of care. However, upon review of the evidence, the court finds that plaintiff failed to present sufficient evidence to support such a theory.

{¶ 12} Jim Fleming has been employed by Akron as the grounds superintendent for the athletic fields for 30 years. Fleming's duties include maintenance of the athletic fields, including the sprinkler system that was installed in 2003. Fleming explained that he is very familiar with the sprinkler system. The AstroTurf field where the flag football

games were played is not watered, but the grassy area surrounding the fields, where the spectators were sitting on September 19, 2007, is watered by the sprinkler system. Fleming testified that he gets a weekly schedule from Akron's athletic department of all scheduled sporting events and that the sprinklers are not supposed to be activated during an event. Fleming explained that there are three ways that the sprinkler can be activated: 1) setting the timer on the locked control box, located on the AstroTurf practice field, for a specific day and length of time; 2) a member of his "crew" manually turning on the sprinkler; and 3) an act of vandalism.

{¶ 13} Fleming described how the sprinkler system works. Fleming explained that the sprinkler flow valve control and solenoid are located inside of a bucket that is placed in the ground. The bucket is covered with a lid, which is level with the ground. Each sprinkler valve controls a specific area of sprinklers and Fleming explained that six sprinklers connect to the same valve station. According to Fleming, the sprinkler system is pressurized and the solenoid prevents the water from constantly flowing. Fleming explained that if the solenoid is broken, the water begins to flow out of the sprinkler.

{¶ 14} Fleming's office at Akron is located approximately 40 yards from the grassy area where the sprinklers turned on. When Fleming arrived at work on September 20, 2007, the morning after plaintiff was injured, he noticed that six sprinklers were activated on the grassy area next to the AstroTurf practice field. He determined that the sprinklers had been running all night because there was standing water on the grass. According to Fleming, he first checked the locked timer box to see if the timer was set to be running at that time; the timer was not turned on. Next, Fleming saw that the lid to the valve bucket controlling the sprinklers in the grassy area was lying on the ground next to the bucket. Fleming looked inside the bucket and found a soda can wedged in between the flow valve and the solenoid. Fleming stated that he turned off the flow valve, and the sprinklers turned off. Shortly thereafter, he removed

the broken valve and replaced it with a new one. Fleming testified that no Akron employee, including Allen, called him on the night of September 19, 2007, when the sprinklers turned on.

{¶ 15} Based on his knowledge, skill, and experience, Fleming opined that the soda can jammed in between the flow valve and the solenoid caused the solenoid to break. Fleming stated that a broken solenoid causes the sprinkler to turn on.

{¶ 16} Plaintiff's argument that the sprinklers turned on due to a malfunction with the timer is unpersuasive. The court finds that an act of vandalism caused the sprinkler system to activate during the intramural games. Fleming testified credibly that he checked the sprinkler timer the following morning, that it was turned off, and that there was no power from the timer to the solenoid. Fleming also explained that he only waters the grass "as needed"; that he does not regularly use the automatic timers on the sprinkler system; and that his staff does not operate the timers. Additionally, Fleming testified that he and his crew members did not manually engage the sprinklers on September 19, 2007. The third and final way the sprinkler system could turn on, by an act of vandalism, is supported by the weight of the evidence. Fleming testified credibly that on September 20, 2007, he found the lid removed from the bucket containing the valve and solenoid and that a soda can was jammed in between the valve and solenoid, which caused the solenoid to break. The court finds that the sprinkler was activated due to an act of vandalism, which occurred at the same time that the sprinklers turned on during the intramural football games on September 19, 2007. The weight of the evidence supports a finding that the sprinklers turned on during the intramural games due to an act of vandalism and that defendants did not create the hazard of the sprinklers turning on. Additionally, plaintiff has failed to present evidence that defendants had either actual or constructive notice of the act of vandalism prior to the sprinkler turning on such that it was under a duty to protect plaintiff from an unreasonable risk of harm.

{¶ 17} Moreover, even if the court were to find that defendants breached a duty owed to plaintiff, plaintiff has failed to prove proximate cause. Plaintiff testified that when she first heard the "hissing" sound, she did not know the noise was the sound of a sprinkler turning on. Plaintiff testified that she stood up and started to run because people were screaming and she did not know what was happening. Plaintiff admitted that she fell over her Great Dane when she stood up, and following the incident, plaintiff told several persons that she had tripped over her dog. (Defendants' Exhibits A, A1, B, C.) The court finds that even if defendants had breached their duty of care to plaintiff by allowing the sprinklers to turn on during a sporting event, it is unforeseeable that a spectator at the event would trip over a 150 pound dog and suffer injury. Additionally, the court finds that plaintiff's fearful reaction to the "hissing" noise was not foreseeable by Akron. The court finds that plaintiff's injury, caused by falling over her 150 pound Great Dane that was sitting next to her, was unforeseeable and the sole proximate cause of her injury. *See Mussivand v. David,* 45 Ohio St.3d 314, 321 (1989); *Strother v. Hutchinson,* 67 Ohio St.2d 282, 287 (1981); *Ross v. Nutt,* 177 Ohio St. 113, 114 (1964).

{¶ 18} Additionally, plaintiff argues that defendants are liable under a theory of res ipsa loquitur; however, the court does not agree. Plaintiff contends that under Akron's policy, the sprinkler system is not supposed to turn on during sport events, and that the sprinkler system could only have turned on as a result of defendants' negligence. The doctrine of res ipsa loquitur is a rule of evidence which allows the trier of fact to draw an inference of negligence from the facts presented. *Morgan v. Children's Hosp.,* 18 Ohio St.3d 185, 187 (1985). "A plaintiff must establish two elements for the doctrine of res ipsa loquitur to apply: '(1) [t]hat the instrumentality causing the injury was, at the time of the injury, or at the time of the creation of the condition causing the injury, under the exclusive management and control of the defendant; and (2) that the injury occurred under such circumstances that in the ordinary course of events it would not have occurred if ordinary care had been

observed.'" *Estate of Hall v. Akron Gen. Med. Ctr.,* 125 Ohio St.3d 300, 2010-Ohio-1041, ¶ 27, quoting *Hake v. George Wiedemann Brewing Co.*, 23 Ohio St.2d 65, 66-67 (1970).

{¶ 19} Both Fleming and Allen testified that the sprinkler system is not supposed to turn on during athletic events at Akron. However, as stated above, the court finds that some unknown third party removed the lid to the sprinkler valve, placed a soda can in the valve, and broke the solenoid. Fleming testified that a vandal could unsecure the lid on the valve cover and tamper with the valve. The act of vandalism occurred simultaneously with the sprinklers turning on. Inasmuch as the court has already concluded that the sprinkler valve was vandalized by some unknown third party, the sprinkler was not under the "exclusive management and control" of defendants. Therefore, plaintiff's argument that res ipsa loquitur applies to this case must fail.

{¶ 20} Plaintiffs have also asserted a claim for loss of consortium. "[A] claim for loss of consortium is derivative in that the claim is dependent upon the defendant's having committed a legally cognizable tort upon the spouse who suffers bodily injury." *Bowen v. Kil-Kare, Inc.*, 63 Ohio St.3d 84, 93 (1992). Since plaintiff has failed to prove her claims of negligence, the loss of consortium claim must also fail.

{¶ 21} For the foregoing reasons, the court finds that plaintiffs have failed to prove their claims by a preponderance of the evidence. Accordingly, judgment shall be rendered in favor of defendants.

_____
PATRICK M. MCGRATH
Judge



# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

DENISE CASTEEL, et al.

   Plaintiffs

   v.

THE UNIVERSITY OF AKRON, et al.

   Defendants

Case No. 2011-12188

Judge Patrick M. McGrath

## JUDGMENT ENTRY

{¶ 22} This case was tried to the court on the issue of liability. The court has considered the evidence and, for the reasons set forth in the decision filed concurrently herewith, judgment is rendered in favor of defendants. Court costs are assessed against plaintiffs. The clerk shall serve upon all parties notice of this judgment and its date of entry upon the journal.

_____
PATRICK M. MCGRATH
Judge

cc:

Brian M. Kneafsey, Jr.
Paula Luna Paoletti
Assistant Attorneys General
150 East Gay Street, 18th Floor
Columbus, Ohio 43215-3130

Richard L. Demsey
U.S. Bank Centre
1350 Euclid Avenue, Suite 1550
Cleveland, Ohio 44115

007
Filed July 25, 2013
Sent to S.C. Reporter April 30, 2014