[Cite as *King v. Emergency Med. Transport*, 2024-Ohio-2542.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STEPHANIE M. KING | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. John W. Wise, J. |
| Plaintiff-Appellant | : | Hon. Andrew J. King, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2023CA00116 |
| EMERGENCY MEDICAL | : |  |
| TRANSPORT, INC | : |  |
|  | : | OPINION |
| Defendant-Appellee |  |  |


CHARACTER OF PROCEEDING:     Appeal from the Stark County Court of
                             Common Pleas, Case No. 2020CV00657


JUDGMENT:                    Affirmed


DATE OF JUDGMENT ENTRY:      July 2, 2024


APPEARANCES:

For Plaintiff-Appellant              For Defendant-Appellee

M. SHAWN DINGUS                      JAMES H. GORDON
PLYMALE & DINGUS LLC                 JEREMY KOPP
136 W. Mound St., Ste. 100           100 E. Campus View Blvd., Ste. 250
Columbus, OH 43215                   Columbus, OH 43235

*Gwin, P.J.*

{¶1} Appellant appeals the August 15, 2023 judgment entry of the Stark County Court of Common Pleas.

*Facts & Procedural History*

{¶2} On April 3, 2020, appellant Stephanie King filed a negligence complaint against appellee Emergency Medical Transport, Inc. ("EMT") relating to an incident on August 20, 2016. Appellant alleged that because EMT employees Sarah Swoyer ("Swoyer") and Mark Thompson ("Thompson") were working within the course and scope of their employment and committed negligent acts on August 20, 2016, EMT was negligent. EMT filed an answer to the complaint on May 4, 2020.

{¶3} The matter proceeded to a jury trial beginning on August 7, 2023.

{¶4} Appellant testified to the August 20, 2016 incident. She was working at McDonald's on August 20, 2016, in Bellaire, Ohio. During her break, sometime after 1:00 p.m., she went outside and sat on a retaining wall in the parking lot to smoke a cigarette. Appellant moved over because an ambulance pulled into a parking space right in front of her. It was approximately three feet away from her. The female ambulance driver sat on the wall with appellant to talk with her and smoke a cigarette. The male ambulance driver went into the restaurant to purchase food. When he returned, both the male and female got back into the ambulance.

{¶5} When the ignition of the ambulance "was hit," appellant believes a "horn went off" that caused her to plug her ears. She initially thought the noise was from the ignition, but she then saw two horns on the lower part of the bumper of the ambulance.

{¶6} Appellant saw the ambulance pull away. When asked how she could identify the ambulance, appellant stated the ambulance was dark red and white, with a "51" and a heart on it. Appellant testified she was "certain" the "51" on the ambulance at the McDonald's that day was within a foot of the rear of the ambulance towards the "back of the ambulance on the passenger side." However, on appellee's ambulance, that is not where the "51" is located. Appellant also agreed that a picture of Swoyer from the time of the incident shows her hair color as blond, but appellant's testimony is that the female employee she saw on August 20, 2016 had short, brown hair.

{¶7} After the incident, appellant went to the hospital. When asked why some of the notes from the hospital visit stated her hearing was compromised due to "ambulance sirens," appellant denied telling anyone it was a "siren." Rather, she believes she told them it was an "air horn." Appellant stated that four days later, the male ambulance driver came into McDonald's and stated, "how's your hearing," and appellant responded, "still gone."

{¶8} Appellant testified she started having balance issues in 2018. Appellant was also asked about her prior hearing loss. She said that, prior to the incident, she did have tinnitus, but it would go away. In January of 2018, appellant slipped on ice in the McDonald's parking lot and broke her leg. She was on workers' compensation from January of 2018 until April of 2018.

{¶9} In the summer of 2018, appellant went looking for the ambulance in the Village of Bellaire because she "got tired of having to explain to people what happened." Appellant and her friend Tom Lance went looking for the ambulance. She found what she believes was the ambulance that sounded its air horns on August 20, 2016. She took a

picture of the front of the ambulance to show the horns.  Appellant also began looking for an attorney in 2018, and hired one in July of 2018.  Appellant messaged her former co-worker in August of 2018 and stated she "got all the information for that ambulance I needed."

{¶10}  Thompson is employed by appellee.  On August 20 2016, he worked in Bellaire, Ohio, as a paramedic.  He started his shift for appellee at 7:00 a.m., and usually worked a twenty-four-hour shift.  He worked that day with Swoyer.  Thompson has no specific recollection of going to McDonald's that day.  He has no recollection of setting off air horns on that day.  He testified he did not go into McDonald's and ask appellant how her hearing was, and also testified he does not recognize appellant.

{¶11}  Thompson stated the air horns on the ambulance he was driving that day functions with an electric switch.  There are two ways to activate the air horns on the ambulance he was driving that day:  a foot pedal on the passenger side and a paddle switch on the driver's side.

{¶12}  Thompson testified as to the similarities and differences in the ambulances of various companies that service the area.  He believes several of the companies had ambulances the same color as appellee's ambulances; he also testified there were some ambulance companies that have chassis' similar to that of appellee.

{¶13}  Swoyer worked with Thompson on August 20, 2016.  She did go to McDonald's multiple times per week, but does not remember or recall visiting McDonald's on August 20, 2016.  She does not remember setting off the air horns on the ambulance.  Swoyer does not recognize appellant.  Swoyer testified that when they would go to McDonald's, they would park the ambulance by a small retaining wall.   She said they

would park sideways because they could get out quickly. Swoyer stated they would "never" pull into a numbered spot.

{¶14} Kenneth Joseph, appellee's Chief Executive Officer, testified that in August of 2016, ten to fifteen different ambulance companies transported patients to Belmont Community Hospital on a regular basis. This hospital is approximately two miles away from the McDonald's where the incident in this case occurred. Joseph stated that all ambulances are required to have air horns. Joseph also testified that appellee first learned of appellant's allegations two years after the alleged incident when it received a copy of appellant's complaint.

{¶15} Thomas Lance is now deceased, so his deposition was read at trial. He testified to what appellant told him after the incident. Appellant told Lance she did not know who was driving the ambulance, but she knew the make and what the truck looked like. When asked if appellant knew the number on the ambulance initially after the incident, Lance testified, "we went out afterwards and found that number out" and "she didn't know the number but she knew what it looked like." When he and appellant went out looking for the ambulance in 2018, they went to "look for [an] ambulance that was red with horns on the front."

{¶16} On cross-examination, Lance admitted he knew of appellee as a company because they came to get him when he overdosed on heroin. Lance denied knowing that ambulance "51" was one of the units that responded to him, but admitted the bills submitted by appellee to him had the number "51" on them.

{¶17} Melanie King is a former co-worker of appellant. She was working on August 20, 2016, at the McDonald's drive-through. Melanie stated various ambulances

came to McDonald's frequently, and they parked across from the drive-through. She saw the ambulance parked in the parking lot that day. She described it as red-and-white. Melanie heard the horns for about 10-15 seconds. When appellant came back into the McDonald's, she said she couldn't hear. On cross-examination, counsel asked Melanie about a Facebook message from appellant to Melanie that stated, "you can tell them, they weren't on a call and I was right in front of their vehicle when they blew that horn." Melanie responded, "okay." Melanie denied having this exchange with appellant, but appellant stipulated the messages were authentic.

{¶18} Steven Becker, a mechanical engineer, was hired by appellant to determine the sound level of an air horn on an ambulance. He testified to the decibel level of the air horn on appellee's ambulance 51. On cross-exam, Becker was asked if he had an opinion as to whether the ambulance he inspected (appellee's ambulance) actually had its air horns activated. He stated, "just her [King's] testimony that the air horn was triggered." Appellant's son and her nephew testified to her condition before and after the incident. Dr. Boyd, an economist, testified to appellant's lost earning capacity. Dr. Richard Oestrich, a vocational expert, testified as a vocational expert to appellant's vocational prospects. Dr. Hicks, a medical doctor, testified to appellant's medical condition. Most of the cross-examination of the experts focused on whether appellant suffered from dizziness, hearing loss, and balance problems prior to the incident.

{¶19} At the close of the evidence, appellant requested the trial court include a res ipsa loquitur jury instruction. Counsel's reasoning for the request was that it was not possible for appellant to identify which party, the male employee or the female employee, hit the air horn. Counsel for appellee argued that the facts called into question whether

Thompson or Swoyer were even at the McDonald's, and whether appellee's ambulance number 51 was at McDonald's on this particular day was in dispute because other ambulances frequented the McDonald's. Counsel for appellee argued, "there is evidence there were a multitude of ambulance companies that operated in that area that could have been at that McDonald's."

{¶20} The trial court denied appellant's request for a res ipsa loquitur instruction. However, to alleviate appellant's concern that she could not prove which employee (male or female) actually hit the air horn, the court put in the jury instructions that "you must find by the greater weight of the evidence that either Sarah Swoyer or Mark Thompson were employees of appellee," "either Swoyer or Thompson were acting within the scope of their employment, "either Swoyer or Thompson acted negligently," and "either Swoyer or Thompson's negligence proximately caused appellant's injury."

{¶21} The jury found in favor of appellee. The jury answered only the first interrogatory, which stated "do you find by a preponderance of the evidence that Mark Thompson or Sarah Swoyer was negligent." The jury circle "no." Accordingly, the jury signed a general verdict in favor of appellee.

{¶22} The trial court issued a judgment entry in favor of appellee on August 15, 2023. Appellant appeals the August 15, 2023 judgment entry of the Stark County Common Pleas Court and assigns the following as error:

{¶23} "I. THE TRIAL COURT ERRED BY FAILING TO INSTRUCT THE JURY ON THE DOCTRINE OF RES IPSA LOQUITUR."

I.

{¶24} In her sole assignment of error, appellant contends the trial court committed error by failing to instruct the jury on the doctrine of res ipsa loquitur. Appellant argues there is substantial evidence to prove that the instrumentality that purportedly caused appellant's injuries was in the exclusive control and management of appellee and only the agents of appellee had the ability and opportunity to activate the air horn system at the time of the incident.

{¶25} Res ipsa loquitur is an evidentiary rule that permits, but does not require, a jury to draw an inference of negligence from circumstantial evidence. *Estate of Hall v. Akron Gen. Med. Ctr.*, 125 Ohio St.3d 300, 2010-Ohio-1041, 927 N.E.2d 1112. The rule "originated by necessity when the true cause of an occurrence was known or could be determined by the defendant, but not the plaintiff." *Id.* The res ipsa loquitur rule is most often utilized in cases involving "falling objects, passenger common carriers, or other situations which presented a dangerous threat of serious injury or death." *Id.*

{¶26} Where the predicate conditions of res ipsa loquitur are established, the plaintiff is not required to offer affirmative evidence of the defendant's negligence, but may urge the factfinder to infer the defendant's negligence from the predicate conditions. *Torres v. Gentry*, 5th Dist. Ashland No. 06 COA 038, 2007-Ohio-4781. In order to warrant the application of the doctrine, the plaintiff must establish the following: (1) that the instrumentality causing the injury was, at the time of the injury, or at the time of the creation of the condition causing the injury, under the exclusive management and control of the defendant; and (2) that the injury occurred under such circumstances that in the ordinary

course of events it would not have occurred if ordinary care had been observed." *Knox v. Bag-N-Save Foods*, 5th Dist. Tuscarawas No. 1998AP 080100, 1999 WL 254518.

**{¶27}** We review de novo whether the evidence supported a jury instruction on the doctrine of res ipsa loquitur. *Estate of Hall v. Akron Gen. Med. Ctr.*, 125 Ohio St.3d 300, 2010-Ohio-1041, 927 N.E.2d 1112

**{¶28}** The Ohio Supreme Court has stressed this rule of evidence should only be utilized when a defendant's negligence is the only reasonable inference from the facts. *Estate of Hall v. Akron Gen. Med. Ctr.*, 125 Ohio St.3d 300, 2010-Ohio-1041, 927 N.E.2d 1112; *Jennings Buick, Inc. v. City of Cincinnati*, 63 Ohio St.2d 187, 406 N.E.2d 1385 (1980). The Court stated that when there is evidence presented to the jury which would allow the jury to find that one or another potential cause of the injury is not attributable to the negligence of the defendant, the rule of res ipsa loquitor does not apply. *Id.;* see also *Baranova-Benit v. Patel,* 5th Dist. Delaware No. 18 CAE 11 0090, 2019-Ohio-3898 (res ipsa loquitur instruction inapplicable when there are two equally probable causes of appellant's injury, one not attributable to the defendant); *D'Amore v. Cardwell*, 6th Dist. Lucas No. L-06-1342, 2008-Ohio-1559; *Klasic v. Time Warner Entertainment Co, LP*, 7th Dist. Mahoning No. 06 MA 49, 2007-Ohio-1125 (no res ipsa loquitur instruction in slip and fall case); *Ray v. Wal-Mart Stores, Inc.*, 4th Dist. Washington No. 12CA21, 2013-Ohio-2684 (defendant does not have exclusive control over a display of merchandise where members of the public frequent the area); *Nationwide Agribusiness Ins. Co. v. J.D. Equipment, Inc.*, 12th Dist. Fayette No. CA2011-06-012, 2012-Ohio-229 (record does not indicate who re-routed the cable and caused the negligence, so res ipsa loquitur inapplicable).

{¶29} Under the evidence presented in this case, there are two equal and probable causes of appellant's injury, an air horn from appellee's ambulance, and an air horn from another company's ambulance. "This is not a situation where it can be said 'the thing speaks for itself.'" *Estate of Hall v. Akron Gen. Med. Ctr.*, 125 Ohio St.3d 300, 2010-Ohio-1041, 927 N.E.2d 1112. Rather, there is a conflict as to which instrumentality caused the injury – the ambulance owned by appellee, or an ambulance owned by another company. The cause of appellant's injury was a question for the jury to determine, and the trier of fact must weigh the evidence and decide who to believe.

{¶30} The evidence that comes closest to that required for a res ipsa instruction is appellant's own testimony. However, this testimony, when coupled with the testimony from the other witnesses regarding other ambulance companies demonstrating it is equally probable that appellant's injury was not attributable to appellee's negligence, is not sufficient to warrant a res ipsa instruction. *Ross v. Am. Red Cross*, S.D. Ohio No. 2:90-CV-905, 2012 WL 1656995, affirmed 567 Fed. Appx. 296.

{¶31} Upon review of the transcript of the trial, the primary issue, other than the extent of appellant's injuries attributable to this incident and what her pre-existing injuries were, was the identity of the ambulance that was at the scene on the day of the incident. Repeatedly throughout the trial, from the opening statement to closing statements, appellee asserted it was not their ambulance at the McDonald's when appellant was injured. Appellant recognized this in her own closing statement, as her counsel stated, "the defense has said throughout the case it wasn't us." Kenneth Joseph testified there were approximately ten or fifteen ambulance services bringing patients to Belmont Hospital, the hospital that is two miles from the McDonald's. Thompson testified as to the

similarities and differences in the ambulances of various companies that service the area. He believes several of the companies had ambulances the same color as appellee's; he also testified there were some ambulance companies that have chassis' similar to that of appellee's ambulance 51. Lance testified that appellant did not know the number on the ambulance prior to 2018, when they went looking for ambulances in the area with air horns.

**{¶32}** There was a significant dispute at trial whether appellee's ambulance was at the scene on the date and time in question. Appellee could not have exclusive control or management over an ambulance owned by a different company. In this case, providing the res ipsa loquitur instruction would be an aid in assisting appellant in proving identity. However, the doctrine of res ipsa loquitor cannot be utilized to prove identity. "Where the cause is unknown, application of the doctrine works an injustice on the defendant." *Fidelity & Guaranty Ins. v. Spires*, 4th Dist. Athens No. 1123, 1983 WL 3179. Res ipsa loquitur can provide proof of the breach, but cannot be used to provide proof of the cause. *Id.*

**{¶33}** Even if we accept appellant's contention that the jury instructions were erroneous, we find the error was harmless beyond a reasonable doubt pursuant to Civil Rule 61. *Farmers Ins. of Columbus, Inc. v. Lister*, 5th Dist. Fairfield No. 2005-CA-29, 2006-Ohio-142; *Domer v. Joan*, 5th Dist. Tuscarawas No. 2006AP100057, 2007-Ohio-6877. Counsel for appellant argued during the trial that the true cause of the occurrence was known or could be determined by appellee, but not appellant, because only appellee knew which one of the employees of appellee actually deployed the air horn. Counsel for appellant stated the instruction on res ipsa loquitur was necessary because appellant had no way to prove which employee deployed the air horn, and the proposed jury instructions

and interrogatories were framed in such a way that appellant would have to prove which one of the employees was negligent.

**{¶34}** However, the trial court alleviated this issue in the construction and formation of its final jury instructions and interrogatories.  The instructions provided to the jury by the court stated that "you must find by the greater weight of the evidence that either Sarah Swoyer or Mark Thompson were employees of the defendant," that "either Swoyer or Thompson were acting within the scope of employment," "either Swoyer or Thompson acted negligently," and "either Swoyer or Thompson's negligence proximately caused the plaintiff's injury."  The interrogatories also utilized this language.  Accordingly, any error in the instructions was harmless.

**{¶35}**  Based on the foregoing, appellant's assignment of error is overruled.

**{¶36}**  The August 15, 2023 judgment entry of the Stark County Court of Common Pleas is affirmed.

By: Gwin, P. J.,

Wise, J, and

King, J. concur